PEOPLE v SASSON

Docket No. 99392. Submitted February 1, 1989, at Detroit. Decided March 7, 1989.

Emil C. Sasson was approached by a police officer and a federal drug agent after he disembarked a plane from Fort Lauderdale. The police officer asked to see his plane ticket, which. Sasson showed him. The officer asked Sasson if he had any narcotics and Sasson replied that he did. He was arrested and charged with possession of over fifty grams of a mixture containing cocaine. The Recorder's Court of Detroit, Wendy M. Baxter, J., suppressed the cocaine and dismissed the case. The people appealed.

The Court of Appeals *held:*

The court clearly erred in suppressing the cocaine. Inoffensive contact between a member of the public and the police does not amount to a seizure of the citizen in the absence of some evidence indicating a seizure, such as the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person or the use of language or tone of voice indicating that compliance with the officer's requests might be compelled. There was nothing in the record suggesting that defendant had any objective reason to believe that he was not free to proceed on his way.

Reversed and remanded.

SEARCHES AND SEIZURES — INVESTIGATORY STOPS.

Inoffensive contact between a member of the public and the police does not amount to a seizure of the citizen in the absence of some evidence indicating a seizure, such as the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person or the use of language or tone of voice indicating that compliance with the officer's requests might be compelled.

*Frank J. Kelley,* Attorney General, *Louis J.*

REFERENCES

Am Jur 2d, Searches and Seizures §§ 8 *et seq.*

Validity of consent to search given by one in custody of officers. 9 ALR3d 858.

*Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief of the Criminal Division, for the people.

*Richard Paul Zipser,* for defendant.

Before: DANHOF, C.J., and BEASLEY and MAC-KENZIE, JJ.

PER CURIAM. Defendant was charged with possession of over fifty grams of cocaine, MCL 333.7401(1), (2)(a)(iii); MSA 14.15(7401)(1), (2)(a)(iii). The people appeal as of right from an order granting defendant's motion to suppress the cocaine as evidence and dismissing the case. We reverse.

Defendant was arrested at Detroit Metropolitan Airport upon his arrival on a flight originating from Fort Lauderdale, Florida, and he admitted to police officers who were questioning him that he was carrying cocaine. The only issue in this case is whether the questioning of defendant amounted to an unjustified detention in violation of the Fourth Amendment, so that the cocaine should be suppressed as the fruit of an unlawful seizure of defendant's person. Defendant's position is essentially that he was subjected to a *Terry* stop *[Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968)] without the "reasonable suspicion" required under *Terry.* The people contend that this case amounts to a permissible police encounter in a public place, short of a *Terry* stop.

At an evidentiary hearing, Detroit Police Officer Alan Kment testified that he and another narcotics squad officer, along with two federal drug enforcement agents, were assigned to the airport to look for possible drug couriers. The officers were plainclothed but armed. Kment observed persons leaving a plane from Fort Lauderdale because that

city is known as a drug distribution center. Defendant got off the plane carrying a shoulder bag, appearing nervous, looking from side to side and over his shoulder, and walking rapidly. Kment and one of the federal agents followed defendant to the outer part of the terminal, where they approached on either side of him and showed their police identification. Kment informed defendant that they were police officers, asked to speak with defendant "for a minute," and explained the officers' purpose at the airport. Kment next asked to see defendant's airplane ticket, which defendant produced. Defendant was then asked if he had any narcotics and he answered that he did. Defendant was arrested and taken to an airport DEA office, where he removed a roll containing cocaine from around his waistband.

The Fourth Amendment guarantees against unreasonable searches and seizures, and applies to seizures of persons that are short of traditional arrests, involving only brief detentions. *City of Pontiac v Baldwin,* 163 Mich App 147, 150; 413 NW2d 689 (1987), and cases cited therein. However, "not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry, supra,* 392 US 19, n 16. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v Mendenhall,* 446 US 544, 554; 100 S Ct 1870; 64 L Ed 2d 497 (1980) (opinion of Stewart, J.). Thus:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some

questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. . . . Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. [*Florida v Royer*, 460 US 491, 497; 103 S Ct 1319; 75 L Ed 2d 229 (1983) (opinion of White, J.; citations omitted).]

See also *People v Shabaz*, 424 Mich 42; 378 NW2d 451 (1985), *People v Daniels*, 160 Mich App 614; 408 NW2d 398 (1987).

In this case, the trial court concluded that the officers made a sufficient showing of authority to constitute a seizure of defendant, i.e., that the encounter with defendant amounted to a *Terry* stop. In so ruling, the court noted that the police "at no time told defendant he was free to leave" and found that "[t]he request for an airline ticket is a further example of the detention and seizure." The court then found that the police lacked the reasonable suspicion necessary to conduct a *Terry* stop and ordered the narcotics evidence suppressed.

A court's ruling on a motion to suppress evidence will not be set aside unless clearly erroneous. A ruling is clearly erroneous when the reviewing court is firmly convinced that a mistake has been made. *People v Alfafara*, 140 Mich App 551, 556; 364 NW2d 743 (1985). In this case, we believe that such a mistake has been made.

In *United States v Mendenhall, supra,* two DEA agents observed the defendant, who matched a drug-courier profile, disembark an airplane and walk through an airport concourse. The agents approached her, identified themselves as federal agents, and asked to see her identification and airline ticket, which she produced. The Supreme

Court held that this contact did not amount to a seizure within the meaning of the Fourth Amendment:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person or the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See *Terry v Ohio, supra* at 19, n 16; *Dunaway v New York,* 442 US 200, 207, and n 6; [99 S Ct 2248; 60 L Ed 2d 824 (1979)]; 3 W LaFave, Search and Seizure, pp 53-55 (1978). In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.
>
> On the facts of this case, no "seizure" of the respondent occurred. The events took place in the public concourse. The agents wore no uniforms and displayed no weapons. They did not summon the respondent to their presence, but instead approached her and identified themselves as federal agents. They requested, but did not demand to see the respondent's identification and ticket. Such conduct, without more, did not amount to an intrusion upon any constitutionally protected interest. The respondent was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions. Nor was it enough to establish a seizure that the person asking the questions was a law enforcement official. See *Terry v Ohio,* 392 US at 31, 32-33 (Harlan, J., concurring). See also ALI, Model Code of Pre-Arraignment Procedure, § 110.1(1) and commentary, pp 257-261 (1975). In short, nothing in the record suggests that the respondent had any objective reason to believe that she was not free to end the conversation in the concourse and proceed on her way, and for that reason we conclude that

the agents' initial approach to her was not a seizure.

Our conclusion that no seizure occurred is not affected by the fact that the respondent was not expressly told by the agents that she was free to decline to cooperate with their inquiry, for the voluntariness of her responses does not depend upon her having been so informed. See *Schneckloth v Bustamonte* [412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973)]. [446 US 554-555 (opinion of Stewart, J.).]

In this case, as in *Mendenhall,* two plainclothes officers approached defendant in a public place, rather than "several" officers "summoning" defendant. *Mendenhall, supra.* There is no evidence that the officers displayed their weapons, touched defendant, or used threatening language. Further, as in *Mendenhall,* neither the officers' request to see defendant's ticket nor their failure to affirmatively inform defendant that he was free to decline to cooperate transformed their contact with defendant into a Fourth Amendment seizure, as the trial court apparently believed. In short, as in *Mendenhall,* nothing in the record suggests that defendant had any objective reason to believe that he was not free to end the conversation and proceed on his way. Accordingly, there was no seizure of defendant and the narcotics evidence was not tainted by an unlawful stop of defendant. Accord, *Daniels, supra.*

Reversed and remanded.