PEOPLE v SHANKLE

Docket No. 199376. Submitted January 6, 1998, at Lansing. Decided February 6, 1998, at 9:05 A.M.

Wayne A. Shankle, Jr., was charged in the 56-2 District Court with carrying a concealed weapon. During the preliminary examination, the arresting police officer testified that, while on routine patrol at 1:40 A.M., he came upon a car with Arkansas license plates parked on a private driveway with its engine running and its parking lights on, that he saw the defendant in the driver's seat, that he identified himself as a police officer to the defendant, that he asked the defendant for identification, and that, while the defendant was getting out of the car, he saw a handgun near the center console of the car. The court, Paul F. Berger, J., granted the defendant's motion to suppress the evidence and dismiss the charge, ruling that the arresting officer's request for identification had constituted a stop under *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and that the stop had to be, but was not, supported by reasonable suspicion that criminal activity was afoot. The Eaton Circuit Court, Thomas S. Eveland, J., affirmed on appeal. The prosecution appealed by leave granted.

The Court of Appeals *held*:

A police approach for questioning on the street amounts to a consensual encounter, not a *Terry* stop, unless there exist intimidating circumstances leading the person to reasonably believe the person was not free to leave or the person rebuffs the police officer by refusing to answer and walking away. It is in the latter situations that reasonable suspicion that criminal activity might be afoot must be present before the police may detain the person.

In this case, the police officer, in questioning the defendant and asking for identification, did not seize the defendant. The record does not indicate that intimidating circumstances compelled the defendant to cooperate, e.g., that the officer harbored an intention to detain the defendant until he got satisfactory information, that the officer made a show of force, that the officer used words or a tone of voice that indicated the defendant's compliance was compelled, or that the officer positioned his patrol car in such a way as to prevent the defendant from leaving.

Reversed and remanded.

FITZGERALD, P.J., dissenting, stated that a person is seized within the meaning of the Fourth Amendment if, in view of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Under the circumstances of this case, the defendant reasonably could have believed that he was not free to ignore the police officer's request for identification. Because the seizure in this case was not supported by a reasonable suspicion of criminal activity, the seizure was illegal and the district court and the circuit court did not err in ruling that the evidence had to be suppressed and the charge had to be dismissed.

SEARCHES AND SEIZURES — NONCOERCIVE QUESTIONING — VOLUNTARY COOPERATION.

A police officer who approaches a person and seeks the person's voluntary cooperation through noncoercive questioning does not restrain the person's liberty or seize the person within the meaning of the Fourth Amendment; such an encounter does not require the presence of specific and articulable facts sufficient to give rise to a reasonable suspicion by the officer that the person detained has committed or is committing a crime.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Jeffrey L. Sauter,* Prosecuting Attorney, and *William M. Worden,* Senior Assistant Prosecuting Attorney, for the people.

*Melissa G. Leckie,* for the defendant.

Before: FITZGERALD, P.J., and O'CONNELL and WHITBECK, JJ.

WHITBECK, J. The prosecutor appeals, by leave granted, a circuit court order affirming a district court order granting defendant's motion to suppress evidence and dismiss the case. We reverse.

Defendant Wayne A. Shankle, Jr., was charged with one count of carrying a concealed weapon under MCL 750.227(2); MSA 28.424(2). The evidence at the preliminary examination showed that at 1:40 A.M. on June 18, 1996, Eaton Rapids Police Officer Ken Milli-

kin was on routine patrol when he saw a car with an Arkansas license plate parked in a private driveway near its edge with the street.[1] The engine of the car was running and its parking lights were on. Officer Millikin, who found the situation to be suspicious, approached the car and saw defendant lying down in the reclined driver's seat with a pillow on his face. Officer Millikin provided the following description of his encounter with defendant:

> I tapped on the window to make sure the subject was okay. He woke up and rolled the window down and asked me if he knew me. I identified myself at that time as a police officer and I asked him if he lived at the residence. He stated that he did not. I asked him for some identification. At that time he sat the seat up and he opened the door, and he began to exit the vehicle. And while he was doing so, I could see the grips of a handgun in a—like nylon holster that was stuffed between the seat—the passenger seat and the center console of the vehicle.

Officer Millikin then placed defendant under arrest.

At the close of the proofs, defendant moved to dismiss, arguing that pursuant to *People v Freeman*, 413 Mich 492; 320 NW2d 878 (1982), Officer Millikin's request for identification amounted to a *Terry*[2] stop and, because the stop was not supported by reasonable suspicion that criminal activity was afoot, it was unconstitutional. The district court agreed. The prosecutor appealed to the circuit court, which determined

---

[1] Officer Millikin was the only witness to testify at the preliminary examination. In concluding that the evidence at issue should be suppressed, the district court did not question the honesty or basic accuracy of Officer Millikin's testimony, but rather accepted his version of events. Accordingly, we accept Officer Millikin's testimony as credible in reviewing the issue before us.

[2] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

that the district court had not erred in its interpretation and application of *Freeman.*

A "seizure" occurs within the meaning of the Fourth Amendment if, in view of all the circumstances surrounding an encounter with the police, a reasonable person would have believed that the person was not free to leave. *People v Armendarez,* 188 Mich App 61, 69; 468 NW2d 893 (1991). An investigatory *Terry* stop constitutes a seizure and requires specific and articulable facts sufficient to give rise to a reasonable suspicion that the person detained has committed or is committing a crime. When, however, an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there has been no restraint on the person's liberty and the person is not seized. *People v Bloxson,* 205 Mich App 236, 241 (HOLBROOK, Jr., P.J.), 249 (FITZGERALD, J., concurring in Judge HOLBROOK's opinion); 517 NW2d 563 (1994).

We note that defendant has questioned the propriety of Officer Millikin's entering private property, the driveway in which defendant's car was sitting, to approach defendant. However, it is undisputed that the property in question belonged to defendant's brother, not to defendant. Thus, we conclude that defendant would not have standing to challenge any violation of the protection against unreasonable searches and seizures in connection with Officer Millikin's entering the driveway. Clearly, defendant did not personally have a reasonable expectation of privacy in that property. *People v Lombardo,* 216 Mich App 500, 505; 549 NW2d 596 (1996). We further conclude, in any event, that Officer Millikin's entry into the driveway did not constitute a "search" for consti-

tutional purposes because it did not interfere with anyone's legitimate expectation of privacy. See *id.* at 504. Merely entering the private property of another is not an offense unless one has been forbidden to do so or refuses to depart after having been told to do so by a proper person. See MCL 750.552; MSA 28.820(1); *Freeman, supra* at 496-497. More importantly, it is commonplace for solicitors, drivers of motor vehicles wanting to reverse direction, and other individuals to enter the unsecured driveways of private homes. Accordingly, defendant had no reasonable expectation of privacy against a police officer merely entering the driveway to ask him questions. *Lombardo, supra* at 504.

In *Freeman, supra* at 493-494, the defendant was sitting in his car in a private parking lot near a darkened house. The engine was running, the parking lights were on, and it was late at night. Two officers approached the defendant and "asked" him to get out of his car and to produce identification and registration. The Supreme Court ruled that the defendant had been seized "when the officers *asked* him to leave his automobile and to produce identification," noting specifically that one of the officers testified that the defendant was not free to go "until I found out who he was and why he was parked there." *Id.* at 494-495 & n 3 (emphasis supplied). Because the circumstances did not provide a sufficient basis for a reasonable suspicion of criminal activity to support an investigatory stop, the stop was unwarranted. *Id.* at 496-497.

We believe that the difficulty in this case relates to the sometimes ambiguous use of the term "asked." While this term is often used to signify a request for

voluntary action, it is many times used to refer to a polite instruction to perform a mandatory action. In *Freeman*, there was apparently no argument about whether the defendant complied with a voluntary request or was effectively ordered or required by the police to get out of his car and produce identification. Rather, the prosecution in *Freeman* argued that there was sufficient basis to support the officers' suspicion in that case that criminal activity might be afoot. *Freeman, supra* at 495. It was already well established at the time of the *Freeman* decision that a person could waive the protection against unreasonable searches and seizures by consenting to a search. See, e.g., *People v Rosales*, 406 Mich 624, 629; 281 NW2d 126 (1979) (further search after a *Terry* protective search requires consent *or* probable cause).

Against this background, it would have made no sense for the *Freeman* Court to have concluded that a request for consensual production of an item constituted a "search" or "seizure" requiring objective justification. In context, we believe that the references by the *Freeman* Court to the officers in that case having "asked" the defendant to produce identification and get out of his car reflected mandatory directions, not requests for voluntary action. Thus, *Freeman*, properly understood, does not require a holding that reasonable suspicion is necessary for a police officer to ask a person to voluntarily produce identification.

Moreover, following several United States Supreme Court rulings, this Court ruled some years later that "for *Terry* purposes a police approach for questioning on the street amounts to a consensual encounter, not a *Terry* stop, unless there exist intimidating circumstances leading the person to reasonably believe he

was not free to leave or the person rebuffs the police officer by refusing to answer and walking away. It is in the latter situations that justification for a *Terry* stop must be present before the police may detain the person." *People v Daniels*, 160 Mich App 614, 619; 408 NW2d 398 (1987). See also *People v Sinistaj*, 184 Mich App 191, 197; 457 NW2d 36 (1990); *People v Sasson*, 178 Mich App 257, 259-260; 443 NW2d 394 (1989).

In a more recent case, *People v Taylor*, 454 Mich 580, 583; 564 NW2d 24 (1997), an officer saw the five defendants sitting in a car in a public-access parking lot late at night. The engine was turned off, and the defendants were eating sandwiches. *Id.* Curious about why the defendants were sitting in a parked car, a police officer approached. When the driver rolled down his window, the officer smelled the odor of burnt marijuana. The officer asked the defendants for identification and if they had been smoking marijuana. The defendants stated that they did not have identification and had not been smoking marijuana. *Id.* at 583-584. The officer then called for a back-up unit to assist with a possible controlled-substances violation. *Id.* at 584. The Court ruled that, when the officer approached the car and asked defendants if they would answer some questions, he had not violated the Fourth Amendment. The Court stated that the encounter was "justified as a mere inquiry, and thus was reasonable without a showing of probable cause." *Id.* at 590. However, once the officer called for back-up "so that he could have assistance in ordering the defendants out of the car," the officer seized the defendants. *Id.* Accordingly, we consider it established that a police officer's request for volun-

tary action does not constitute a "search" or "seizure" requiring objective justification.

Although the circumstances that led Officer Millikin to approach defendant here and those that led the officers to approach the defendant in *Freeman* were similar, this; alone, does not require a similar result. The *Freeman* Court did *not* hold that objective justification was needed for a police officer to approach a person sitting. in a car or that the initial encounter constituted a seizure. Rather, we conclude the *Freeman* Court held that, because the officers seized the defendant by ordering him from his car and demanding identification, the facts had to (but did not) create a reasonable suspicion of criminal activity in order to justify the seizure.

Although facts similar to those in *Freeman* led Officer Millikin to approach defendant, the encounter in this case did not amount to a seizure. Pursuant to *Taylor, supra,* the fact that Officer Millikin questioned defendant and asked for identification did not transform the encounter into a seizure. Indeed, the trial court found that Officer Millikin made an "inquiry" to defendant. Unlike *Freeman,* Officer Millikin did not order defendant from his car. There is nothing in the record to suggest that intimidating circumstances compelled defendant to cooperate, e.g., that Officer Millikin harbored an intention to keep defendant there until he got satisfactory information from him, that Officer Millikin made a show of force, that Officer Millikin used words or a tone of voice that would indicate that defendant's compliance might be compelled, or that Officer Millikin positioned his patrol car in such a way that defendant was prevented from leaving. See *United States v Men-*

*denhall*, 446 US 544, 554; 100 S Ct 1870; 64 L Ed 2d 497 (1980). From the record, Officer Millikin merely made a voluntary request to defendant to produce identification. Thereafter, defendant voluntarily opened his car door, exposing the gun inside the car to Officer Millikin. As the gun was then in Officer Millikin's plain view, he could seize the weapon without a warrant. *People v Cooke*, 194 Mich App 534, 539; 487 NW2d 497 (1992). Therefore, the district court erred in suppressing the evidence and dismissing the case on that basis.

We note that the circumstances of this case are distinguishable from the "requests" of the police detective that were found to amount to a seizure under the Fourth Amendment in *Bloxson, supra*. In *Bloxson*, this Court determined that a reasonable person in the defendant's position would not have felt free to decline a police detective's request to search his bag in light of repetitive, potentially incriminating questioning by the police detective and other circumstances of the encounter. *Id.* at 238-239, 244-245. The police detective in *Bloxson* asked the defendant if he had any weapons and, after receiving another negative response, asked again if the defendant had any weapons. *Id.* at 244. Thereafter, the police detective asked to search the defendant's bag, and the defendant denied the request. *Id.* at 239, 244. The police detective again repeated the request to search the bag, which led to the discovery of the evidence suppressed in that case. *Id.* at 239, 245. Unlike *Bloxson*, there is no indication that Officer Millikin repeatedly questioned defendant during the encounter in the driveway. Further, there is no indication that, up to the point of the challenged request for identification,

defendant by action or inaction expressed a desire not to voluntarily cooperate with Officer Millikin.

Our conclusion in this case is further reinforced by the decision of the United States Supreme Court in *Immigration & Naturalization Service v Delgado*, 466 US 210; 104 S Ct 1758; 80 L Ed 2d 247 (1984). *Delgado* involved the practice of Immigration and Naturalization Service (INS) agents in the course of a "factory survey." Some INS agents positioned themselves near the exits to workplaces. Other INS agents questioned employees about their citizenship and, if an employee gave an "unsatisfactory response" or admitted to being an alien, asked the employee to produce immigration papers. *Id.* at 212-213. The *Delgado* Court concluded that this questioning did not amount to a detention or seizure under the Fourth Amendment. *Id.* at 212. Of particular note in the case before us is the Court's comment that "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Id.* at 216. Accordingly, in this case, Officer Millikin did not subject defendant to a constitutionally regulated search or seizure by merely requesting that defendant produce identification.

Reversed and remanded to the district court for further proceedings consistent with this opinion on the charge against defendant. We do not retain jurisdiction.

O'CONNELL, J., concurred.

FITZGERALD, P.J. (*dissenting*). I respectfully disagree with the majority's conclusion that defendant was not

seized when Officer Millikin approached defendant and asked him to produce identification.

A person is seized within the meaning of the Fourth Amendment if, in view of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Michigan v Chesternut*, 486 US 567, 573; 108 S Ct 1975; 100 L Ed 2d 565 (1988); *People v Daniels*, 186 Mich App 77, 80; 463 NW2d 131 (1990). I agree with the majority opinion that a person who is approached by an officer in a public place and merely asked questions is not, without some form of detention, subject to a seizure. *People v Shabaz*, 424 Mich 42, 56-57; 378 NW2d 451 (1985); *People v Taylor*, 214 Mich App 167, .170; 542 NW2d 322 (1995). Indeed, the cases relied on by the majority opinion involve persons who were approached in public places and questioned by officers. The apparent rationale for this principle is that under such circumstances one is free to ignore the questions and simply walk away. The present case is distinguishable in that defendant was on private property at the time he was approached and questioned by Officer Millikin.[1] Officer Millikin entered the private property[2] and identified himself to defendant as a police officer. Officer Millikin did not merely ask questions, but went one step further and asked defendant to produce identification. At this point, defendant, who was in the driveway of his brother's

---

[1] Defendant was sleeping in his vehicle in his brother's driveway because, having reached his destination in the middle of the night, he did not want to awaken anyone.

[2] I refer to private property not because defendant has a reasonable expectation of privacy in the private property of his brother, but rather because defendant was not on public property from which he could be expected to simply walk away.

residence where he would be staying while visiting Michigan, could not logically be expected to simply "walk away," as one in a public place could be expected to do. Defendant reasonably could have believed that he was not free to ignore Officer Millikin's request for identification under these circumstances, and for that reason I would conclude that defendant was seized when Officer Millikin asked defendant to produce identification. See, e.g., *People v Freeman*, 413 Mich 492; 320 NW2d 878 (1982).[3] Because there is no dispute that Officer Millikin did not have a reasonable suspicion supported by articulable facts that criminal activity was afoot, the seizure was illegal. Hence, I would affirm the district and circuit courts' suppression of the evidence and dismissal of the case.

.

---

[3] The only factual distinction between the present case and *Freeman* is that the officer in *Freeman* asked the defendant to step out of the vehicle and produce identification. I do not believe that this distinction is of such significance to hold that the district and circuit courts erred in relying on *Freeman* in concluding that a seizure occurred in this case when defendant was asked to produce identification.