# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EULALIO RAMOS, JR.,

        Defendant-Appellant.

UNPUBLISHED
December 15, 2016

No. 329057
Berrien Circuit Court
LC No. 2013-002012-FH

Before: WILDER, P.J., and MURPHY and O'BRIEN, JJ.

PER CURIAM.

Defendant, Eulalio Ramos, Jr., was convicted of possession with intent to deliver 45 kilograms or more of marijuana, MCL 333.7401(2)(d)(*i*), and sentenced to 180 days' imprisonment and five years' probation. He appeals as of right his June 28, 2015 judgment of sentence. We affirm.

This case arises out of a traffic stop that occurred in Berrien County. At approximately 10:30 a.m. on May 17, 2014, Michigan State Police Trooper James Gillespie pulled over defendant after observing him commit several traffic violations. Gillespie approached the vehicle, asked defendant for his license, registration, and proof of insurance, and asked defendant about the purpose of his trip. Defendant provided the documentation and informed Gillespie that "he was going to Grand Rapids" "to see his aunt and nephew but later "changed his story" to his "aunt and cousin, and then started to giggle a little bit, in what [Gillespie] took to him making light of the fact that he had stumbled in conversation about what he was truly doing." According to Gillespie, "He appeared to be lying to [him] about the purpose for his trip." During the stop, Gillespie noticed "a small child laying on the back seat" "without a car seat or safety belt on." Gillespie expressed concern for the child's safety, and defendant first replied that the child's seat was "in the back" but later "changed that statement, stating, no, he meant its back home." Gillespie then returned to his patrol vehicle to review defendant's documentation.

At an evidentiary hearing, Gillespie described the remainder of the traffic stop, in pertinent part, as follows:

> I re-approach this time on the driver side and asked Mr. Ramos to step out of the vehicle. At that time, his child, his 3-year old child was on his lap and was awake. And, he determined to hold onto his son and brought him back with him, and we spoke at the back of his vehicle.

-1-

* * *

I had had him step out of the vehicle, to the back of his vehicle, where I could visually . . . attempt to determine if he's still okay to drive. I was concerned about his driving. So, when we spoke at the back of his vehicle and I was in the process of talking to him about the stop and giving him a verbal warning for these items, I was still evaluating his ability to drive. I didn't smell alcohol on him. I didn't see him wobble. In fact, he held his son okay . . . during that time.

* * *

During that conversation at the back of his car, that lasted maybe one or two minutes, I handed him back his paperwork, his documents, and while speaking with him, I realized in my mind that I did not think he was intoxicated and that I did think he was okay to drive.

At that point, Gillespie testified, he returned defendant's documentation, issued a verbal warning, and concluded the traffic stop. Shortly thereafter, however, Gillespie asked defendant whether he would be willing to answer additional questions. Defendant agreed. After defendant denied that "there was anything illegal going on," Gillespie asked defendant if he could search the vehicle, and defendant affirmatively agreed that he could. Gillespie proceeded to search defendant's vehicle and found seven "20 to 25 pound packages" of marijuana in "red and black duffle bags in the" trunk. Defendant was arrested and charged with possession with intent to deliver 45 kilograms or more of marijuana, MCL 333.7401(2)(d)(*i*).

After being charged, defendant moved to suppress "[t]he statements and evidence obtained during the stop," arguing that they "must be suppressed pursuant to the United States' and Michigan's' [sic] Constitutions, because neither prong of the *Terry* [*v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968),] standards were met . . . ." First, defendant argued that the first prong of the *Terry* standards was not satisfied because "Trooper Gillespie's reasons for pulling Mr. Ramos over are trivial at best." Second, defendant argued that the second prong of the *Terry* standards was not satisfied based on "the lack of any indication that Trooper Gillespie observed anything that any officer could find to be reasonable or articulable suspicion that a crime has been or is being committed." According to defendant, "there was no break in the questioning" and no way that defendant "could have known that he was free to go at any point." The trial court denied defendant's motion, and defendant was subsequently convicted and sentenced as described above. This appeal followed.

On appeal, defendant challenges the trial court's opinion and order denying his motion to suppress. "A trial court's findings of fact on a motion to suppress are reviewed for clear error, while the ultimate decision on the motion is reviewed de novo." *People v Hrlic*, 277 Mich App 260, 262-263; 744 NW2d 221 (2007). "In analyzing the propriety of the detention associated with a traffic stop," courts "apply the standard set forth in *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed2d 889 (1968)." *People v Williams*, 472 Mich 308, 314; 696 NW2d 636 (2005). "[T]he reasonableness of a search or seizure depends on 'whether the officer's action was justified at its

inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' " *Id.*, quoting *Terry*, 392 US at 20.

On appeal, defendant first argues that Gillespie did not have an articulable and reasonable suspicion for the initial traffic stop, i.e., that Gillespie's action in pulling him over was not justified at its inception. *Williams*, 472 Mich at 314. However, "a police officer may stop and detain a motor vehicle on the basis of an articulable and reasonable suspicion that the vehicle or one of its occupants is violating the law[.]" *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). Here, the record supports the trial court's finding that Gillespie had an articulable and reasonable suspicion to stop defendant's vehicle. Gillespie testified that he observed defendant's vehicle cross the fog line and divider lines several times. Video footage from his patrol vehicle supported this testimony. The trial court found this testimony credible, and this Court defers to the trial court's determination in this regard. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). See also *People v Christie (On Remand)*, 206 Mich App 304, 309; 520 NW2d 647 (1994) (holding that the police officer "had reasonable cause to suspect ongoing criminal activity, i.e., that [the] defendant may have been intoxicated" when the "[d]efendant's vehicle was seen swerving in the lane and driving on the lane markers"). Therefore, Gillespie had articulable and reasonable suspicion to stop defendant's vehicle. The fact that defendant finds the "reasons" for the stop "trivial" has no impact on our analysis in this regard.

Second, defendant argues that, pursuant to the United States Supreme Court's decision in *Rodriquez v United States*, ___ US ___; 135 S Ct 1609; 191 L Ed 2d 492 (2015), Gillespie's detention of defendant after returning his documentation was not reasonably related to the underlying reason for the stop. Thus, he claims, any statements made or evidence found after returning his documentation should have been supressed. However, in this case, unlike in *Rodriguez*, defendant was not detained without his consent after Gillespie returned his documentation and informed him that he would not receive a ticket. *Id.* at 1613 (stating that the officer "did not consider [the defendant] free to leave" after completion of the traffic stop because the officer detained the defendant after defendant refused to consent to a dog sniff). Here, defendant gave Gillespie consent to ask additional questions and search his vehicle. At the evidentiary hearing, Gillespie testified that defendant had the opportunity to leave after his documentation was returned to him and that defendant did not have to answer any additional questions. Given defendant's consent, his reliance on *Rodriquez* is misplaced.

To the extent defendant also claims that he was not free to leave at that time, the record supports the trial court's conclusion that defendant was no longer "seized" after Gillespie returned defendant's documentation. The trial court explained its decision as follows:

> This Court finds that the traffic stop ended at the point when, after already having returned Defendant's documentation, Trooper Gillespie informed Defendant that he was not giving him a ticket and asked Defendant if he would mind answering a few more questions. The fact that Trooper Gillespie began his request for consent to additional questions so quickly after informing Defendant that he was not going to write him a ticket does make this a close call. However, the totality of the evidence leads to the conclusion that a reasonable person would have realized the detention was over and felt free to leave. This was a one-on-one

-3-

interaction between Trooper Gillespie and Defendant. Trooper Gillespie did not block Defendant's path back to his car or use any other showing of force while talking to Defendant. Moreover, neither Trooper Gillespie's choice of words nor tone of voice was overly forceful or authoritative; in fact, it was extraordinarily congenial and polite.

Most importantly, although Trooper Gillespie did not explicitly inform Defendant that he was free to leave, he did impliedly inform him of his right to refuse the request to answer more questions. Trooper Gillespie qualified his initial request by stating "if you don't mind" and then sought clarification of Defendant's answer by asking "is that yes or no?" Upon hearing that, a reasonable person would have concluded that "no" was an acceptable answer and would have felt free to terminate the encounter.

We agree with the trial court in this regard. "A 'seizure' within the meaning of the Fourth Amendment occurs only if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave." *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). Here, after Gillespie returned defendant's documentation and gave him a verbal warning, Gillespie stated that he had some further questions he would like to ask defendant if defendant did not mind. Defendant said "okay," and, after Gillespie asked whether that was a yes or no, defendant answered "yes." Although the request for defendant to answer additional questions occurred shortly after Gillespie returned defendant's documentation, "in view of all the circumstances, a reasonable person would have believed that he" was free to leave. In addition, nothing in the record suggests "that intimidating circumstances compelled defendant to cooperate." *People v Shankle*, 227 Mich App 690, 697; 577 NW2d 471 (1998). Defendant had the opportunity to decline answering more questions and terminate the encounter but chose not to. *Jenkins*, 472 Mich at 32-33. Therefore, the trial court properly concluded that defendant was no longer seized after Gillespie returned defendant's documentation and advised him that he would not receive a ticket.

Additionally, the trial court properly concluded that defendant's consent to search his vehicle was voluntary. Consent to search is an exception to the Fourth Amendment's warrant and probable cause requirements. *Schneckloth v Bustamonte*, 412 US 218, 219; 93 S Ct 2041; 36 L Ed 2d 854. However, for consent to be valid, it must be voluntary. *Id*. at 222; see also *People v Borchard-Ruhland*, 460 Mich 278, 294; 597 NW2d 1 (1999). Here, defendant consented to the search of his vehicle. The record contains no evidence that Gillespie threatened or coerced defendant in any way. See *Williams*, 472 Mich at 318 (stating that "[a]n investigatory stop . . . is not so inherently coercive that it renders involuntary consent given during the stop"). "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Immigration & Naturalization Service v Delgado*, 466 US 210, 216; 104 S Ct 1758; 80 L Ed 2d 247 (1984); see also *Jenkins*, 472 Mich at 33.

Based on the foregoing, the trial court did not err in denying defendant's motion to suppress. The trial court properly concluded that Gillespie had articulable and reasonable suspicion to stop defendant's vehicle, that defendant was no longer "seized" pursuant to the Fourth Amendment once Gillespie returned defendant's documentation and advised him that he

would not be writing a ticket, and that defendant voluntarily consented to answering Gillespie's additional questions and to the search of his vehicle.

Affirmed.

/s/ Kurtis T. Wilder
/s/ William B. Murphy
/s/ Colleen A. O'Brien