# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 27, 2017

Plaintiff-Appellee,

v

No. 330575
Wayne Circuit Court
LC No. 15-004016-01-FC

MICHAEL DARNELL SYKES,

Defendant-Appellant.

Before: SAWYER, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of three counts of kidnapping, MCL 750.349, eight counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c, two counts of armed robbery, MCL 750.529, three counts of felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to prison terms of 37½ to 70 years for each kidnapping and CSC-I conviction, 10 to 15 years for each CSC-II conviction, 40 to 60 years for each robbery conviction, and two to four years for each felonious assault conviction, those sentences to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. BASIC FACTS

Defendant was convicted of feloniously assaulting, kidnapping, and sexually assaulting three young women, JT, JA, and LR, on the night of March 28-29, 2015, while armed with a gun. He was also convicted of robbing JT and LR. After the women stopped at a gas station, an overweight black male wearing a black zippered ski mask got into their car and demanded their property. Only the area from the bridge of his nose to the top of his eyebrows was visible. The man was armed with a revolver. He robbed the women and then took them to various locations where he sexually assaulted them. He eventually let them go. The women were shown photographic arrays of possible suspects but did not identify anyone.

-1-

On the night of April 16, 2015, defendant was the backseat passenger of a car involved in a police chase.[1] He was found to be in possession of a black zippered ski mask. Defendant was later included in two photographic arrays shown to two of the victims, who identified him as their assailant. DNA evidence linked defendant to the sexual assaults.

## II. JUDICIAL MISCONDUCT

Defendant first argues that he was denied a fair trial due to judicial misconduct. The issue as presented actually involves additional issues of shackling and defendant's right to be present at trial. Defendant objected below to the trial judge's conduct of speaking to the complainants, so that aspect of this issue is preserved. However, defendant did not preserve the issue whether this conduct violated defendant's right to be present because defendant did not object on that basis below and "an objection based on one ground is usually considered insufficient to preserve an appellate attack based on a different ground." *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Defendant also failed to object to the other instances of misconduct on which he relies, leaving those claims unpreserved as well. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). To the extent the issue is preserved, "[t]he question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162; 869 NW2d 233 (2015). The remaining unpreserved aspects of this issue are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

A criminal defendant is entitled to expect a "neutral and detached magistrate of justice." *People v Moore*, 161 Mich App 615, 619; 411 NW2d 797 (1987). "A jury trial demands the fact and appearance of judicial impartiality, neither of which should ever be compromised by comments that unfairly belittle defense counsel." *People v Wigfall*, 160 Mich App 765, 773; 408 NW2d 551 (1987). "A trial judge is presumed to be impartial and the party who asserts partiality has a heavy burden of overcoming that presumption." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). As explained in *Stevens*, 498 Mich at 164:

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein,

---

[1] As a result of this incident, defendant was charged in a separate case (the "gun case") with carrying a concealed weapon (CCW), MCL 750.227, and resisting or obstructing a police officer, MCL 750.81d.

the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial.

## A. SPEAKING TO THE WITNESSES

After the complainants had testified, but before the trial ended, the judge spoke to them.[2] Defendant twice objected, expressing concern that the judge's "behavior has changed" and the judge "has been prejudice [sic] . . . ." Because there is nothing in the record to indicate that the judge spoke to the complainants in the jury's presence, such conduct could not have influenced the jury in any way. Defendant argues instead that the judge's conduct violated his right to be present at trial.

A criminal defendant has a due process right to be present during the proceedings whenever his presence has a reasonably substantial relation to his opportunity to defend against the charges. *United States v Gagnon*, 470 US 522, 526-527; 105 S Ct 1482; 84 L Ed 2d 486 (1985). This right is also statutorily protected by MCL 768.3, which provides that "[n]o person indicted for a felony shall be tried unless personally present during the trial[.]" "A defendant has a right to be present during . . . any . . . stage of trial where the defendant's substantial rights might be adversely affected." *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984). Specifically, "[a] defendant has a right to be present during the voir dire, selection of and subsequent challenges to the jury, presentation of evidence, summation of counsel, instructions to the jury, rendition of the verdict, imposition of sentence, and any other stage of trial where the defendant's substantial rights might be adversely affected." *Id.* A defendant's absence from a part of the trial provides a basis for reversal of a conviction only if there is a reasonable possibility that the defendant was prejudiced by his absence. *People v Buie (On Remand)*, 298 Mich App 50, 59; 825 NW2d 361 (2012).

Defendant's absence during the judge's conversation with the complainants did not violate defendant's right to be present at all critical stages of the criminal proceeding. Although the conversation occurred in the course of the trial, it could not have affected the outcome of the trial because the court was not sitting as the trier of fact and anything the complainants said was not disclosed to the jury. In addition, the judge stated that he "did not discuss the case with them in any manner" and that the conversation had not affected any of his rulings.[3] Defendant

---

[2] Although the judge stated that he asked permission from counsel to speak to the witnesses, the record does not indicate what answer, if any, was given. Accordingly, we cannot conclude that this aspect of the issue has been waived.

[3] The judge stated that he expressed concern for the complainants' welfare. He told them that "regardless of what happens in this case, they should not let this define the rest of their" lives. He expressed the "hope that they were in school and getting an education" and encouraged them to "seriously consider going further in their education and getting something so they could take care of themselves."

speculates that the conversation could have influenced the court at sentencing based on comments the court made at sentencing. We disagree.

Defendant asserts that, at sentencing, the judge "gave the counter-argument" to defendant's challenge to the scoring of offense variable (OV) 4. The judge was actually ruling on an objection to the scoring of OV 4. He stated, "I know you know that . . . these young people went under some psychological trauma as long as they were with this defendant. So ten is a proper score." The judge's other remarks were based on the evidence at trial. He stated that he had no sympathy for defendant, whom he described as "cold, cool, smart, and calculating." He then cited the complainants' testimony that defendant ordered LR to attempt to commit a robbery and the catastrophic consequences that could have resulted if the intended victims had resisted. Although the judge did remark on "the life prospects" of the complainants, there is nothing to suggest that he was influenced by anything the complainants said during their previous conversation.

## B. REMARKS TO DEFENSE COUNSEL

Defendant contends that the judge made belittling remarks to defense counsel. In one instance, counsel was conferring with defendant whether to have a particular witness produced. The judge remarked, "Counsel, your client doesn't know what the rules are. . . . I expect for you to make the decisions." This statement is not particularly offensive and could not have influenced the jury against defendant because it occurred outside the presence of the jury.

Another incident did occur in front of the jury. During cross-examination of a witness, defense counsel asked to defer cross-examination until the witness could find and produce a document. The court denied the request, stating, "There is no time, counsel. Keep moving." It can be inferred that the judge may have sounded annoyed, but expressions of annoyance do not establish partiality. *In re Hocking*, 451 Mich 1, 13 n 16; 546 NW2d 234 (1996). The judge did not belittle or demean counsel and this one isolated incident could not have created the appearance of partiality against defendant.

The other incident involved defendant's decision to rest or present proofs. Outside the presence of the jury, defense counsel refused to immediately say what she planned to do, indicating that she needed to speak to defendant first. The judge was willing to give counsel time to confer with defendant. She apparently did not want to do it in the courtroom, but she did not ask for a recess. The judge called the jury out. Once the jury was in the courtroom, the judge asked counsel what she planned to do. Again, she refused to say. Eventually, she asked for "a little break." The judge instructed the deputies to take defendant out and instructed counsel to go with them. There was nothing overtly improper about the discussion that occurred in the presence of the jury and defendant does not contend otherwise. Instead, he argues that the fact that deputies escorted him out of the courtroom and took him to "lock up" was the equivalent of shackling.

"Freedom from shackling is an important component of a fair trial." *People v Dixon*, 217 Mich App 400, 404; 552 NW2d 663 (1996). Freedom from shackling is rooted in a defendant's due process rights. *Deck v Missouri*, 544 US 622, 626-628; 125 S Ct 2007; 161 L Ed 2d 953 (2005). But "[t]he right of a defendant to appear at trial without any physical restraints is not

absolute." *People v Banks*, 249 Mich App 247, 256; 642 NW2d 351 (2002). Restraints are permitted "to prevent the escape of the defendant, to prevent the defendant from injuring others in the courtroom, or to maintain an orderly trial." *Dixon*, 217 Mich App at 404. A trial court abuses its discretion when it requires a criminal defendant to be shackled without citing record evidence justifying the use of shackles. *People v Payne*, 285 Mich App 181, 186-187; 774 NW2d 714 (2009). If the court orders the defendant to be shackled without adequate justification and the shackles are visible to the jury, "the defendant need not demonstrate actual prejudice to make out a due process violation." Instead, the prosecution must prove that the error did not affect the verdict. *Deck*, 544 US at 635. But if the shackles are not visible, the defendant is not prejudiced by the error. *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008).

Defendant was not shackled, visibly or otherwise. He asserts that the jury saw deputies escorting him to the lock up, which he contends is the equivalent of visible shackling. Apart from defendant's failure to cite authority for this novel argument, there is nothing to show that the jurors knew that defendant was being taken to a holding cell. The court reporter noted parenthetically in the transcript that this is where defendant was going, but the judge stated only that defendant was being taken "in the back." Because the record shows only that deputies escorted defendant out of the courtroom so he could confer with counsel "in the back," we reject defendant's attempt to equate the matter with visible shackling.

In sum, defendant has not demonstrated that the trial judge's conduct pierced the veil of judicial impartiality, and he has not shown that the other matters discussed as part of this issue violated his right to due process or denied him a fair trial.

## III. IDENTIFICATION EVIDENCE

Defendant next argues that the trial court erred in admitting the complainants' identification testimony and the photographic arrays in which they identified him. Defendant did not preserve this issue by either moving to suppress the identification evidence before trial, *People v Solomon*, 82 Mich App 502, 506; 266 NW2d 453 (1978), or by objecting to the admission of the identification evidence at trial. *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001). Therefore, we review this issue for plain error affecting defendant's substantial rights. *Id.* Defendant further argues, however, that defense counsel was ineffective for not challenging the identification evidence in the trial court. Because defendant did not raise the issue of ineffective assistance of counsel in a motion for a new trial or request for an evidentiary hearing in the trial court, our review of that issue is limited to mistakes apparent from the record. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). To establish ineffective assistance of counsel, defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

In *People v Kevin Williams*, 244 Mich App 533, 542-543; 624 NW2d 575 (2001), this Court explained:

An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process. In order to

-5-

challenge an identification on the basis of lack of due process, "a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." If the trial court finds the procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for in-court identification can be established "that is untainted by the suggestive pretrial procedure." [Citations omitted.]

Defendant complains that the witnesses identified him after being shown multiple photographic lineups, but the record shows that his photograph only appeared in two lineups, the ones in which LR and JA identified him, and he has not shown that his photograph was singled out in some way, rendering it so suggestive as to create a substantial likelihood of misidentification. Instead, he argues that because the witnesses had seen news reports in which he was featured, they must have based their identifications on that exposure rather than on their ability to view the perpetrator during the offense. However, "the potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair." *Perry v New Hampshire*, 565 US 228, 245; 132 S Ct 716; 181 L Ed 2d 694 (2012). Further, "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id*. Because the fact that the witnesses' exposure to news reports featuring defendant did not involve any state action, the fact that it may have influenced their identification of defendant did not constitute a denial of due process.

Defendant also argues that LR's identification should have been suppressed because during the photographic lineup at which she identified defendant, "she was told by the observing officer 'the person you point [sic] out is in custody.' " An identification procedure can be unduly suggestive when, for example, a police officer tells the witness that the defendant had been arrested for the offense and shows her a photograph of the defendant. "The display of the single photograph, combined with the statement that this was the man the police had arrested for the [crime], was highly suggestive." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998).

Defendant has taken LR's testimony out of context. LR testified that she picked defendant out of a photographic lineup. On cross-examination, she admitted that she was "led to believe that they had finally caught the perpetrator[.]" She explained that "when I pointed him out – when we were leaving, he said the person that you pointed out is in custody." Obviously, this situation is far different from that in *Gray* in that LR was shown an array of six photographs, not one, and nobody said anything about defendant having been arrested until after she identified him as her assailant. Thus, defendant has not shown that the photographic lineup was unduly suggestive. Moreover, even if the officer's statement somehow tainted LR's subsequent in-court identification, defendant has not shown that the admission of LR's in-court identification affected his substantial rights. An error affects the defendant's substantial rights when it affects the outcome of the case. *Carines*, 460 Mich at 763. Given that all three witnesses testified that the masked gunman had vaginal intercourse with LR in the abandoned house, that a used condom containing fresh semen was recovered from the house the same day, and that the DNA developed from that semen matched defendant's DNA profile, there is no reasonable likelihood that, had LR not been allowed to identify defendant as her assailant, the outcome of the trial would have been different.

Because defendant has not shown plain error in the admission of the identification evidence, his related claim of ineffective assistance of counsel must also fail. Because defendant has not shown that the identification evidence was inadmissible, there is no basis to conclude that a motion to suppress would have been successful. "[D]efense counsel is not ineffective for failing to pursue a futile motion." *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008).

## IV. DEFENDANT'S STANDARD 4 BRIEF

Defendant presents additional arguments in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. The arguments are difficult to discern and present no basis for relief.

Defendant argues that a Fourth Amendment violation occurred when he was taken into custody following the car chase, and that violation tainted all evidence recovered in connection with this case such that it should have been suppressed. Defendant also raises a related claim of ineffective assistance of counsel. Because neither issue was raised below, we review defendant's substantive claim for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763-764, and we review defendant's ineffective assistance of counsel claim for mistakes apparent from the record. *Lane*, 308 Mich App at 68.

"The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). "An investigatory stop, which is limited to a brief and nonintrusive detention, constitutes a Fourth Amendment seizure." *People v Jones*, 260 Mich App 424, 429; 678 NW2d 627 (2004). A police officer may briefly stop and detain a person to investigate possible criminal activity if he has a reasonable suspicion based on specific and articulable facts that the person detained has committed or is committing a crime. *People v Shankle*, 227 Mich App 690, 693; 577 NW2d 471 (1998). The trial testimony in this case and the preliminary examination testimony in the gun case indicate that the vehicle in which defendant was riding was targeted for a traffic stop because it was speeding and because it matched the description of a vehicle wanted in connection with some robberies. Defendant does not appear to challenge the validity of the investigatory stop itself. His arguments are instead focused on the scope and duration of the detention.

"A traffic stop is reasonable as long as the driver is detained only for the purpose of allowing an officer to ask reasonable questions concerning the violation of law and its context for a reasonable period." *People v Williams*, 472 Mich 308, 315; 696 NW2d 636 (2005) (footnote omitted). "Authority for the seizure . . . ends when tasks tied to the [reason for the stop] are – or reasonably should have been – completed." *Rodriguez v United States*, ___ US ___; 135 S Ct 1609, 1614; 191 L Ed 2d 492 (2015). "Once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop" creates reasonable suspicion of further criminal activity. *United States v Hill*, 195 F3d 258, 264 (CA 6, 1999). In other words, if a new set of circumstances presents itself, "an officer is justified in extending the detention long enough to resolve the suspicion raised." *Williams*, 472 Mich at 315 (footnote omitted).

Defendant contends that the duration of the stop was unreasonable because the police learned that the vehicle was not wanted in connection with the robberies. According to defendant, Sergeant Jackson determined that the car was registered to the driver's boyfriend and had not been reported stolen. Defendant further asserts that Jackson "has testified that the [car] is not the vehicle he was looking for. He identified this fact at the scene before leaving. His officers checked the license plates before a tow truck was leaving to come remove the now abandoned [car] and that's when Sergeant Jackson identified that car was not the vehicle he was looking for, which did dispell [sic] his initial suspicion." Defendant has not offered record citations for his assertions and we were not able to find any such testimony in the transcripts from defendant's preliminary examination or trial. Because defendant has failed to establish the factual predicate for his claim, he has not shown plain error.

Defendant also argues that the evidence was insufficient to establish probable cause to arrest him for CCW and for resisting or obstructing a police officer. Defendant apparently does not dispute that the police had reasonable suspicion for initiating the traffic stop. "A police officer may order occupants to get out of a vehicle, pending the completion of a traffic stop, without violating the Fourth Amendment's proscription against unreasonable searches and seizures." *People v Chapo*, 283 Mich App 360, 368; 770 NW2d 68 (2009). Officer Taylor testified in the gun case that he had to forcibly remove the front seat passenger from the car because he refused commands. When Taylor looked up, he saw defendant fighting with Officer Cleaves. Officer Cleaves did not testify at the preliminary examination in the gun case and, while both he and Taylor testified at trial in this case, neither mentioned defendant's fight with Cleaves. From this, defendant concludes that Taylor must have lied about defendant resisting or obstructing Cleaves, and thus the police lacked probable cause to arrest him for that offense.[4] The officers' failure to mention the details of defendant's arrest for charges unrelated to this case does not compel the conclusion that the officers previously lied about those details. Indeed, it is more likely that the officers did not testify to the details regarding defendant's conduct at the scene because it was not relevant to any issue at trial in this case. Because defendant's claim is based on pure, unsupported speculation, he has failed to show plain error.

And because defendant has not shown a plain Fourth Amendment violation, he has not shown that there was a valid basis on which to move to suppress the evidence. Because any motion to suppress would have been futile, defense counsel was not ineffective for failing to pursue such a motion. *Brown*, 279 Mich App at 142.

Defendant's second claim of ineffective assistance of counsel is that counsel failed to investigate what Cleaves knew about the traffic stop and discover that defendant did not resist or obstruct him during the stop. This, too, is based on defendant's assumption that Taylor lied about defendant resisting or obstructing Cleaves during the traffic stop because Cleaves did not give similar testimony at defendant's trial in this case. Apart from the fact that there is nothing in the record to indicate that counsel did not investigate Cleaves, there is nothing in the record to

---

[4] Defendant contends for other reasons that the police lacked probable cause to arrest him for CCW. We do not find it necessary to address that issue.

suggest that Cleaves either lied or would have recalled the circumstances of defendant's arrest differently than Taylor. Again, the omission at trial of the details of defendant's arrest can be attributed to the fact that they were not relevant to a fact at issue in this case. It does not compel the conclusion that defendant did not resist or obstruct the officer during his arrest.

Defendant also states that "[t]he search warrant/affidavits are invalid because they were not issued by and review [sic] by an examining magistrate." Defendant does not further explain the basis for this statement. The search warrant affidavits and search warrant documents attached to defendant's Standard 4 brief plainly indicate that they were reviewed and issued by an identified Wayne Circuit Court judge. There is no basis for concluding that the documents were not properly issued.

Affirmed.

/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michael J. Riordan