PEOPLE v FREEMAN

Docket No. 61632. Decided June 14, 1982. On application by defendant for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the defendant's conviction.

Edward J. Freeman was convicted by a jury in Oakland Circuit Court, Robert B. Webster, J., of carrying a pistol in an automobile. The defendant's pretrial motion to suppress the pistol as being illegally seized evidence was denied. The Court of Appeals, Bashara, P.J., and Allen, J. (M. J. Kelly, J., dissenting), affirmed in an unpublished per curiam opinion, holding that police officers properly searched the defendant's car, which was parked with the defendant in it and with its parking lights on and motor running, in a private parking lot near the Hazel Park Race Track, and seized the pistol after they found an open bottle of beer in plain view in the car (Docket No. 77-1083). Defendant applies for leave to appeal.

In an opinion per curiam, signed by Justices Kavanagh, Levin, Fitzgerald, Ryan, and Moody, the Supreme Court held:

1. Freeman was "seized" within the meaning of the Fourth Amendment when the police officers asked him to leave his automobile and to produce identification. Although the police may sometimes be permitted to make limited intrusions on a citizen's freedom of movement on less than probable cause, such investigatory stops comport with the reasonableness requirement of the Fourth Amendment only if the police have an articulable basis for suspecting criminal activity.

2. In this case the record does not establish that the police officers who approached Freeman's vehicle and detained him while requesting that he produce identification and a vehicle registration possessed objective facts justifying a reasonable, articulable suspicion that Freeman was involved in criminal activity. The police officers testified that the defendant's parked automobile idling in the darkened parking lot late at night merely aroused their suspicions without explaining what criminal activity they suspected or how their factual observations supported those suspicions. The record in this case is devoid of any other specific facts which could cast a suspicious light on the presence of Freeman's vehicle in the parking lot. Because

the initial stop was unwarranted, all incriminating evidence flowing from it should have been suppressed as evidence.

Chief Justice Coleman and Justice Williams concurred in the result.

Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Lawrence J. Bunting,* Assistant Prosecuting Attorney, for the people.

*Renfrew, Moir, Miskin & Stover, P.C.* (by *William A. Basse),* for defendant.

PER CURIAM. Edward James Freeman was convicted of carrying a pistol in an automobile.[1] We hold that Freeman's pretrial motion to suppress the pistol and quash the information should have been granted, and accordingly reverse his conviction. The record does not establish that the officers who approached Freeman's vehicle and detained him while requesting that he produce identification and a vehicle registration—a seizure which led to discovery of the pistol—possessed objective facts justifying a reasonable, articulable suspicion that Freeman was involved in criminal activity.

I

At approximately 12:30 a.m. on August 21, 1976, two patrolling Hazel Park police officers observed a lone automobile parked, with its parking lights on and its motor apparently running, near a darkened house in a private parking lot adjoining the Hazel Park Race Track. The officers approached the car and asked the defendant, who was alone

---

[1] MCL 750.227; MSA 28.424.

and occupied the driver's seat, to leave the vehicle and to produce identification and a registration. Defendant produced his driver's license and a recent bill of sale for the vehicle, but no registration. Because the bill of sale did not contain a vehicle identification number (VIN), the officers used a flashlight to obtain the VIN from a plate just inside the windshield while they remained outside the vehicle. In the process, the officer holding the flashlight saw an open beer bottle on the front passenger seat floor.

The officer opened the driver's door and reached across the front seat to seize the bottle. As he did so, he glimpsed the rear sights of a pistol protruding from beneath the driver's seat. The officer removed the bottle, which was about three-quarters full, and seized the pistol.

Freeman's pretrial motion to suppress the pistol and to quash the information was denied, and he was convicted by a jury. The Court of Appeals affirmed in an unpublished opinion, stating in part:

"In order to justify an investigatory 'stop' as initially occurred here, the police must have a 'reasonable belief "that criminal activity *may* be afoot." ' * * *

"Considering the time of night and the presence of a vehicle with its motor running in a parking lot where it apparently did not belong, the police had a reasonable basis for investigating the situation." (Emphasis in original.)

II

Freeman was "seized" within the meaning of the

Fourth Amendment[2] when the police officers asked him to leave his automobile and to produce identification.[3] Although the "balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers"[4] may sometimes permit limited police intrusions upon a citizen's freedom of movement on less than probable cause,[5] such investigatory stops comport with the reasonableness requirement of the Fourth Amendment only if the police "have an articulable basis for suspecting criminal activity".[6]

The people argue that the officers' observation of (1) an idling, occupied vehicle with its parking lights on, parked in an otherwise darkened, deserted parking lot, (2) near a darkened house, (3) at 12:30 a.m. provided sufficient basis for their suspicion that criminal activity might be afoot. We disagree.

In *Brown v Texas*[7] the United States Supreme Court found inadequate justification for police officers to stop a man observed walking away from

[2] US Const, Am IV.

[3] See *Brown v Texas,* 443 US 47, 50; 99 S Ct 2637; 61 L Ed 2d 357 (1979), and *Delaware v Prouse,* 440 US 648, 653; 99 S Ct 1391; 59 L Ed 2d 660 (1979). At the preliminary examination, one of the officers testified that Freeman was not free to go "until I found out who he was and why he was parked there".

[4] *United States v Brignoni-Ponce,* 422 US 873, 878; 95 S Ct 2574; 45 L Ed 2d 607 (1975).

[5] See *Terry v Ohio,* 392 US 1, 20-22; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

[6] *Michigan v Summers,* 452 US 692, 699; 101 S Ct 2587; 69 L Ed 2d 340 (1981). See also *United States v Cortez,* 449 US 411, 417-418; 101 S Ct 690; 66 L Ed 2d 621 (1981), declaring that the detaining officers' assessment of all the circumstances must yield "a particularized and objective basis for suspecting the particular person stopped of criminal activity".

[7] *Brown v Texas,* 443 US 47; 99 S Ct 2637; 61 L Ed 2d 357 (1979).

another man in an alley in an area with a high incidence of drug traffic and to insist that he identify himself, where the only testimony offered in support of the stop was that the situation "looked suspicious" and the officers "had never seen that subject in that area before".

In the instant case, the officers' preliminary examination testimony regarding their observations of Freeman's parked automobile similarly fails to support a reasonable suspicion that criminal activity may have been afoot. The officers testified that they did not believe a felony had been or was being committed and had no information that might connect the vehicle or its driver with a crime. They merely stated that the automobile aroused their suspicions without explaining what criminal activity they suspected or how their factual observations supported those suspicions.[8]

A lone automobile idling in a darkened parking lot late at night does not, without more, support a reasonable suspicion of criminal activity. People may temporarily stop their automobiles in such locations for a variety of reasons: to rest, to check directions, to rendezvous with others, to converse, etc. It is not an offense for an individual to be upon the private property of another unless he has

___

[8] At Freeman's preliminary examination, one officer responded to the prosecutor's inquiry about his purpose for approaching Freeman's vehicle: "Well, just being in the area of the ah, a closed house, no lights on in the house, just a suspicious—suspicious vehicle—* * * being parked there running." The same officer testified that the circumstances were "unusual" and that he asked Freeman to get out of his vehicle "[to] find out who he was and why he was in that particular area at that time of night".

As the Court recognized in *Brown v Texas, supra,* p 52, fn 2, such vague and conclusory testimony must be distinguished from "the observations of a trained, experienced police officer who is able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer".

entered "after having been forbidden so to do by the owner or occupant" or refused to depart after having been told to do so.[9] Of course, the presence of an automobile in these circumstances may, in combination with other specific, objective facts— *e.g.,* a report linking a vehicle of the same description to recent criminal activity[10]—support a reasonable suspicion warranting brief seizure of the vehicle's occupant for limited on-the-scene inquiry. However, the record in this case is devoid of any reference to other specific facts which would cast a suspicious light upon the presence of Freeman's vehicle in the parking lot. As the initial stop was unwarranted, all incriminating evidence flowing therefrom should have been suppressed.[11]

We reverse Freeman's conviction and remand for entry of an order quashing the information.

KAVANAGH, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.

COLEMAN, C.J., and WILLIAMS, J., concurred in the result.

[9] MCL 750.552; MSA 28.820(1).

[10] Whether a particular collection of facts renders the investigatory stop reasonable is of necessity a matter to be determined under all the circumstances of each individual case, *United States v Cortez, supra.* We do not suggest that the example given or the factors mentioned in the text are necessarily or generally significant or supply sufficient grounds in every case.

[11] See *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).