PEOPLE v PEEBLES

Docket No. 174421. Submitted December 19, 1995, at Detroit. Decided
  May 17, 1996, at 9:20 A.M. Leave to appeal sought.

   Dale T. Peebles was convicted by a jury in the Oakland Circuit Court,
   Rudy J. Nichols, J., of operating a motor vehicle while visibly
   impaired. He also pleaded guilty of violating a driver's license
   restriction. He was sentenced to two years' probation. He appealed,
   alleging that the police officers illegally stopped his vehicle without
   a reasonable suspicion that criminal activity was afoot and that one
   of the officers had been improperly allowed to testify as an expert
   with regard to the field sobriety tests to which the defendant was
   subjected.

      The Court of Appeals *held*:

      The police officers' reasonable suspicion of either theft or care-
   less driving sufficed to allow the investigative stop of the defend-
   ant's vehicle, which was being driven in the parking lot of a mall at
   3:00 A.M. without the use of headlights. That one of the officers also
   wrongly believed that the defendant was committing a traffic mis-
   demeanor does not undermine the validity of the investigative stop.
   The district court did not abuse its discretion in binding the
   defendant over for trial, and the trial court properly denied the
   defendant's motions to quash the information and for a directed
   verdict. The trial court did not abuse its discretion in denying the
   defendant's motion in limine to suppress evidence or in determin-
   ing that the police officer was qualified as an expert to testify
   regarding the results of the field sobriety tests.

      Affirmed.


1. SEARCHES AND SEIZURES — INVESTIGATIVE STOPS.

   The police must have a particularized suspicion, based on objective
   observation, that a person stopped has been, is, or is about to be
   engaged in criminal wrongdoing for an investigative stop to be con-
   stitutionally valid; the totality of the circumstances are to be con-
   sidered to assess a police officer's suspicion that criminal activity is
   afoot.

2. SEARCHES AND SEIZURES — INVESTIGATIVE STOPS.

Where the police have a reasonable suspicion of criminal wrongdoing sufficient to justify an investigative stop of a vehicle, the fact that the police also wrongly believed that a defendant was committing a traffic misdemeanor does not undermine the validity of the investigative stop.

3. SEARCHES AND SEIZURES — AUTOMOBILES — REASONABLENESS — POLICE.

The following rules apply with respect to the stopping, searching, and seizing of motor vehicles and their contents: reasonableness is the test that is to be applied for both the stop and the search of moving motor vehicles, reasonableness will be determined from the facts and circumstances of each case, fewer foundation facts are necessary to support a finding of reasonableness where moving vehicles are involved than if a house or a home were involved, and a stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is conducted by the police.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Richard Thompson*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *J. Benjamin Dolan*, Assistant Prosecuting Attorney, for the people.

*Angelo A. Plakas & Associates, P.C.* (by *Angelo A. Plakas*), for the defendant.

Before: MARKMAN, P.J., and MARILYN KELLY and L. V. BUCCI,* JJ.

PER CURIAM. Defendant was convicted by a jury of operating a motor vehicle while visibly impaired, MCL 257.625(3); MSA 9.2325(3). He also pleaded guilty of violating a driver's license restriction, MCL 257.312; MSA 9.2012. He was sentenced to two years' probation. Police officers had stopped defendant after they saw him slowly driving in a parking lot at 3:30 A.M.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

without using his headlights. The officers determined that he was incapable of operating a motor vehicle and arrested him. Defendant appeals the judgment of sentence on the bases that the officers illegally stopped him without a reasonable suspicion that criminal activity was afoot and that one of the arresting officers was not qualified as an expert to testify regarding the field sobriety tests to which defendant was subjected. We affirm.

At trial, defendant testified that the following incidents preceded the stop at issue. On July 2, 1993, he had three or four beers with dinner. At approximately 3:00 A.M. the following morning, a friend telephoned him and asked him to come to a nearby mall to jump-start his car. Defendant complied and successfully jump-started his friend's car. As he started to leave the parking lot, he noticed a police car behind him with its lights flashing and he pulled over.

The officers testified that they noticed defendant's car slowly traveling in a dark parking lot without the use of headlights. They stopped defendant's vehicle and noted several indications that defendant had been drinking alcohol (e.g., staggering, strong smell of alcohol on his breath, and slurred speech).

The officers had defendant perform some field sobriety tests. These included reciting the alphabet, a "finger correlation test," counting backwards from ninety-three to eighty-five, and a five-step "heel to toe" test. They concluded that defendant was not capable of driving a vehicle, arrested him, and took him to the police station.

On appeal, defendant first contends that the trial court erred in denying his motions to quash the information, to suppress evidence, and for a directed ver-

dict. He contends that the trial court should have granted these motions because the police officers had no reasonable suspicion of criminal activity that would have justified a *Terry* investigative stop, see *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and therefore all the evidence gained from the stop was inadmissible as the product of an illegal search and seizure.

To review a circuit court's decision regarding a motion to quash an information, this Court determines if the district court abused its discretion in binding over the defendant. *People v Fiedler*, 194 Mich App 682, 693; 487 NW2d 831 (1992). This Court reviews trial court decisions regarding motions to suppress evidence under the clearly erroneous standard. *People v Muro*, 197 Mich App 745, 747; 496 NW2d 401 (1993). In reviewing a trial court's decision regarding a motion for a directed verdict, this Court views the evidence presented up to the time the motion was made in the light most favorable to the prosecution to determine if a rational factfinder could find the essential elements of the crime proved beyond a reasonable doubt. *People v Daniels*, 192 Mich App 658, 665; 482 NW2d 176 (1992).

The Fourth Amendment of the United States Constitution and Const 1963, art 1, § 11 grant individuals the right to be secure against unreasonable searches and seizures. *In re Forfeiture of $176,598*, 443 Mich 261, 264-265; 505 NW2d 201 (1993). "It is well established that brief investigative stops short of arrest are permitted where police officers have a reasonable suspicion of ongoing criminal activity." *People v Christie (On Remand)*, 206 Mich App 304, 308; 520 NW2d 647 (1994), citing *Terry, supra*. The criteria for

a constitutionally valid investigative stop are that the police have "a particularized suspicion, based on an objective observation, that the person stopped has been, is, or is about to be engaged in criminal wrong-doing." *People v Shabaz*, 424 Mich 42, 59; 378 NW2d 451 (1985). The totality of the circumstances are to be considered to assess the police officer's suspicion that criminal activity is afoot. *Id.*; *Christie, supra* at 308.

> [T]he following rules apply with respect to the stopping, searching, and seizing of motor vehicles and their contents:
>
> "1. Reasonableness is the test that is to be applied for both the stop of, and the search of moving motor vehicles.
>
> "2. Said reasonableness will be determined from the facts and circumstances of each case.
>
> "3. Fewer foundation facts are necessary to support a finding of reasonableness when moving vehicles are involved, than if a house or a home were involved.
>
> "4. A stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is conducted by the police." [*Id.* at 308-309.]

Here, at the preliminary examination, one of the arresting officers testified, "[a] vehicle traveling without the use of headlights at 3:30 in the morning in a dark lot made me suspicious." He did not specify the exact nature of his suspicion. We infer that he suspected theft. Because the stores were closed at that hour, an automobile driving away from the stores without use of its headlights raised a reasonable suspicion of theft. Further, driving in the dark without headlights would also raise a reasonable suspicion of careless driving. See MCL 257.626b; MSA 9.2326(2). A reasonable suspicion of either theft or careless driv-

ing would have provided a legitimate basis for stopping defendant.

At the preliminary examination, the officer additionally testified that, at the time of the stop, he thought that it was a crime to be driving at night without using headlights. However, at trial, the officer conceded that no ordinance prohibits the driving of a vehicle in a parking lot at night without using headlights. Therefore, the officers would not have been authorized to issue defendant a citation on this basis.

However, this fact does not invalidate the reasonable suspicion of ongoing criminal activity raised by defendant's driving without using headlights at 3:30 A.M. as discussed above. That one of the officers—wrongly—believed that defendant was committing a traffic misdemeanor does not undermine the validity of a traffic stop premised upon the officers' reasonable suspicion of other criminal activities raised by defendant's conduct. Either the officers' suspicion that a theft had occurred or their suspicion that defendant was violating the careless driving law sufficed to allow the instant stop.

Defendant contends that *People v Freeman*, 413 Mich 492; 320 NW2d 878 (1982), mandates reversal of his conviction. The *Freeman* Court reversed a conviction of carrying a pistol in an automobile. In *Freeman*, the police officers observed an idling, occupied car with its parking lights on in a darkened, deserted parking lot near a darkened house at 12:30 A.M. The *Freeman* Court held that the circumstances did not support a reasonable suspicion of criminal activity and offered legitimate alternative rationales for the defendant's actions (e.g., to rest, to check directions, to rendezvous with others). *Id.* at 496. Here, the cir-

cumstances supported a reasonable suspicion of criminal activity.

Therefore, we find that the district court did not abuse its discretion in binding defendant over for trial. Nor did the trial court err in denying defendant's motion to quash the information. Nor was the trial court's denial of defendant's motion to suppress clear error. Accordingly, we also find that the trial court appropriately denied defendant's motion for a directed verdict.

Defendant next contends that the trial court erred in denying his motion in limine to suppress evidence of the field sobriety tests because the officer was not qualified as an expert to testify regarding the results of these tests.

This Court reviews for an abuse of discretion trial court determinations regarding whether a witness is qualified to render an expert opinion. *People v Williams (After Remand)*, 198 Mich App 537, 542; 499 NW2d 404 (1993).

MRE 702 governs the admissibility of expert testimony. It states:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The *Williams* Court stated, at 541:

> Admissibility is governed by a three-part test: (1) the expert must be qualified; (2) the evidence must serve to give the trier of fact a better understanding of the evidence

or assist in determining a fact in issue; and (3) the evidence must be from a recognized discipline.

On appeal, defendant argues only that the first element of this test, that the expert was qualified, was not met with respect to the officer's testimony regarding the field sobriety tests. The trial court considered the following evidence regarding the officer's qualifications: he had been a police officer for one year and seven months at the time of the stop at issue and he had received four or five hours of training on the field tests at issue and had received on-the-job training regarding such tests. This evidence indicated that the officer possessed knowledge, training, and experience regarding the field sobriety tests at issue. On the basis of this evidence, the trial court found the officer qualified to offer expert testimony with respect to the field sobriety tests and denied defendant's motion in limine.[1] We find no abuse of discretion in this determination.

For these reasons, we affirm the judgment of sentence.

Affirmed.

---

[1] The trial court limited the officer's testimony regarding the "horizontal gaze and nystagmus test" because there was evidence that he had received only limited training with respect to that test.