# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v PRUDE

Docket No. 165664. Decided July 5, 2024.

Douglas A. Prude was convicted following a jury trial in the Kalamazoo Circuit Court of second-degree fleeing and eluding, MCL 257.602a(4), and assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). Police officers regularly patrolled the area around the Fox Ridge Apartments complex in Kalamazoo because of frequent reports of crimes being committed by nonresidents. On May 30, 2019, Officer Nicholas Deleeuw saw defendant sitting alone in a parked vehicle, with the engine off, in an area of the parking lot where criminal activity was common; no one else was in the area. Officer Deleeuw approached defendant's car, asked defendant for identification, and inquired whether defendant was a resident of the complex. Although defendant declined to identify himself, he answered that he was not a resident but that he stayed at the complex with his girlfriend, who was a resident. Officer Nathan Belen arrived around that time and approached defendant's car; Officer Belen was familiar with defendant and provided his name to Officer Deleeuw. Officer Deleeuw informed defendant that he needed to be with a resident while on the property and then returned to his car to verify defendant's tenant status through the Law Enforcement Information Network and to check the complex's internal database to see if defendant had previously received a trespass warning from the complex. When asked, Officer Belen informed defendant that he was being detained and that he was not free to leave, after which defendant started the car, rolled up his window, and drove away at a high rate of speed; defendant was later arrested and charged. Defendant moved for a directed verdict at the close of the prosecution's proofs, arguing that there was insufficient evidence that he was lawfully detained by the officers, a required element for both of the charges. The court, Paul Bridenstine, J., denied the motion. Defendant later moved for a new trial on the same grounds, and the trial court denied that motion also. Defendant appealed. In an unpublished per curiam opinion issued March 23, 2023 (Docket No. 360234), the Court of Appeals, K. F. KELLY, P.J., and BOONSTRA and REDFORD, JJ., affirmed defendant's convictions. Defendant sought leave to appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice CLEMENT and Justices BERNSTEIN, WELCH, and BOLDEN, the Supreme Court, in lieu of granting leave to appeal and without holding oral argument, *held*:

1. A reviewing court only defers to a jury on questions of fact; it does not defer on questions of law. Thus, while a jury acts as the finder of fact when lawfulness is an element of a

criminal offense, the court remains the ultimate arbiter of whether, under a particular set of facts, police actions were lawful. Taken together, when the lawfulness of police action is an element of a criminal offense, like it is for the offenses in this case, a court reviewing a challenge to the sufficiency of the evidence supporting a conviction must view the facts in the light most favorable to the prosecution and then determine, as a matter of law, whether an officer's actions were "lawful" given those facts. A court may overturn a conviction under this test only when an officer's conduct cannot be reasonably perceived as lawful when viewed under a lens sufficiently deferential to that conduct.

2. With regard to whether a detention was lawful, under the United States Supreme Court's decision in *Terry v Ohio*, 392 US 1 (1968), the Fourth Amendment of the United States Constitution allows an officer to detain an individual for a brief investigatory stop if the officer has a reasonable suspicion that the individual is engaged in, or is about to be engaged in, criminal activity. A *Terry* seizure is only lawful if an officer has an objectively reasonable, particularized suspicion that the specific individual being stopped is engaged in wrongdoing. This analysis is fact-specific and requires an analysis of the totality of the circumstances known by the officer when the seizure occurred.

3. An individual's presence in a high-crime area provides no particular reasonable basis for suspicion as to the activity of that person. Thus, an individual's presence in an area of expected criminal activity, standing alone, is not sufficient to support a reasonable, particularized suspicion that the person is committing a crime. While presence in a high-crime area may support the existence of reasonable suspicion, this is so only if the suspect engages in suspicious behavior. Further, a refusal to cooperate with police officers, without more, does not furnish the minimal level of objective justification needed for a detention or seizure. To hold otherwise would effectively mean that any person who is approached by an officer in a high-crime area must fully cooperate with that officer or else be subject to a *Terry* seizure. In some circumstances, individual factors that would be insufficient on their own to justify a *Terry* stop can be aggregated to provide reasonable suspicion under the totality of the circumstances; but this is true only if the individual factors collectively are greater than the sum of their parts and build to form the requisite objective basis of the particularized suspicion that criminal activity is occurring.

4. In this case, the officers were not acting lawfully in the performances of their duties when they detained defendant, a required element for both offenses for which he was convicted. The relevant facts included that (1) defendant was alone and parked legally with the engine off during daylight hours in an area of the parking lot where nonresidents frequently committed crimes, (2) defendant declined to identify himself at Officer Deleeuw's request, and (3) defendant admitted that he was not a resident of the apartment complex but that he was visiting his girlfriend, who was a resident. These facts did not amount to an objectively reasonable, particularized suspicion that defendant was trespassing. The fact that defendant refused to identify himself and was in an area where other nonresidents had frequently committed crimes did not provide reasonable suspicion that defendant himself was engaged in criminal activity when the officers approached him. Indeed, there was nothing suspicious about defendant being parked in the apartment complex's parking lot in the early evening while visiting a resident of that complex. While the officers had the right to seek a consensual encounter with defendant in the parking lot to determine whether he was engaged in criminal activity and to advise him of any trespass policy

the complex may have had, there was no evidence that defendant engaged in any suspicious behavior to provide a particularized basis for a seizure. Accordingly, because the officers did not act lawfully when they detained defendant—a required element of the offenses—there was insufficient evidence to support his convictions beyond a reasonable doubt.

Court of Appeals judgment reversed, defendant's convictions and sentences reversed, and case remanded to the trial court for entry of judgments of acquittal.

Justice VIVIANO, joined by Justice ZAHRA, dissenting, agreed with the majority's conclusion that the Supreme Court is the final arbiter of whether police actions were lawful and on the standard by which challenges to the sufficiency of the evidence are reviewed. But he disagreed with the majority's conclusion that the officers were not acting in the lawful performance of their duties when they told defendant he was not free to leave. Viewing all the facts of the case in the light most favorable to the prosecution, the lower courts did not clearly err by finding that the officers had a reasonable suspicion that defendant was trespassing. Numerous contextual considerations supported that finding: the officers were on a directed patrol in a high-crime area at the request of the property owner; the officers were familiar with the array of criminal activity that had occurred in that area, including trespass; defendant was parked in a secluded area of the parking lot where crimes including trespass had occurred in the past; the complex's no-trespassing policy required nonresidents to be with a resident while on the property; and defendant refused to identify himself, was not with a resident, and admitted he was not a resident. That evidence gave rise to a reasonable suspicion that defendant may have been trespassing when the officers encountered him, making the officers' detention of defendant lawful. The majority's conclusion to the contrary, without complete briefing or oral argument, was therefore erroneous. Justice VIVIANO would have simply denied defendant's application for leave to appeal.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 5, 2024

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                                                                    No. 165664

DOUGLAS ARNELL PRUDE,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

Even the most cursory warrantless seizure must be justified by an objectively reasonable *particularized* suspicion of criminal activity. In this case, defendant, Douglas Prude, was parked in an apartment-complex parking lot known for frequent criminal activity, and when police officers attempted to detain him to investigate whether he was trespassing, he sped away from the officers in his vehicle. He was charged and eventually convicted by a jury of second-degree fleeing and eluding, MCL 257.602a(4), and

assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). Both offenses required the prosecution to prove beyond a reasonable doubt that the police acted lawfully.[1] Defendant argues that the prosecution presented insufficient evidence that officers lawfully detained him on the basis of a reasonable suspicion that he was trespassing.[2]

We agree. Without more, there is nothing suspicious about a citizen sitting in a parked car in an apartment-complex parking lot while visiting a resident of that complex. Moreover, a citizen's mere presence in an area of frequent criminal activity does not provide *particularized* suspicion that they were engaged in any criminal activity, and an officer may not detain a citizen simply because they decline a request to identify themselves. Even viewed together, these facts did not provide the officers in this case an objectively reasonable particularized basis for suspecting that defendant was trespassing. Accordingly, we reverse the judgment of the Court of Appeals, reverse defendant's convictions and sentences, and remand to the Kalamazoo Circuit Court to enter judgments of acquittal as to both charges.

---

[1] See *People v Chapo*, 283 Mich App 360, 366; 770 NW2d 68 (2009); *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012).

[2] The jury was instructed that the officers could lawfully investigate "trespassing and/or loitering events" at the apartment complex. On appeal, the prosecution only argues that the officers had reasonable suspicion as to trespassing, and the Court of Appeals only affirmed on that basis. In any event, there was insufficient evidence presented regarding a reasonable suspicion of loitering for many of the same reasons discussed later supporting our conclusion that there was insufficient evidence regarding a reasonable suspicion of trespassing.

## I. FACTS

Only two witnesses testified at defendant's trial: Officers Nicholas Deleeuw and Nathan Belen. On May 30, 2019, the officers were patrolling the parking lot at the Fox Ridge Apartments complex in Kalamazoo. They regularly patrolled that area because of frequent reports of criminal activity being committed by nonresidents. At around 6:30 p.m.—while there was still daylight—Officer Deleeuw noticed defendant parked in a vehicle with the engine off in an area of the lot where criminal activity was common. Defendant was alone in the vehicle, and there was nobody else in the vicinity. There was no evidence presented that the vehicle was parked illegally, and both officers testified that they did not know how long defendant had been parked there.

Officer Deleeuw approached the vehicle to engage in a voluntary citizen encounter with defendant. Officer Deleeuw asked defendant for identification and whether he was a resident of the complex. Defendant declined to identify himself and responded that he was not a resident but that he stays there with his girlfriend, who was a resident of the complex. Around this time, Officer Belen arrived and also approached defendant's vehicle. Officer Deleeuw advised defendant that he needed to be with a resident while on the property,[3] and Officer Deleeuw then returned to his vehicle. Officer Deleeuw testified that he intended to verify defendant's tenant status through the Law Enforcement Information Network

---

[3] Officer Deleeuw testified that Fox Ridge Apartments had a "trespassing policy" requiring nonresidents to be either in a tenant's unit or with a tenant while in a common area on the property. However, the written policy itself was never admitted into evidence, and both officers testified that they had not personally read the policy. After a hearsay objection by defendant, the trial court instructed the jury that the testimony regarding the policy was not to be considered as substantive evidence of the policy's existence or its contents.

(LEIN) and to search I/LEADS—an internal Fox Ridge Apartments database[4]—to determine if defendant had previously received a trespassing warning from the complex. Officer Belen remained with defendant. Defendant asked Officer Belen if he was being detained, and Officer Belen responded in the affirmative. Defendant reached for his keys, and Officer Belen told him twice more that he was not free to leave. Defendant eventually started the car, rolled up his window, and drove away at a high rate of speed. Police eventually arrested defendant and charged him with second-degree fleeing and eluding and resisting or obstructing a police officer.

At the close of the prosecution's proofs, defendant moved for a directed verdict, arguing that there was insufficient evidence that the officers lawfully detained him. The trial court denied the motion, and it later denied a motion for a new trial raising the same argument. Defendant was convicted by a jury of both charges. Defendant appealed, arguing once again that the officers did not lawfully detain him. The Court of Appeals affirmed defendant's convictions,[5] and defendant sought leave to appeal in this Court.

## II. STANDARD OF REVIEW

"It is a fundamental principle of our system of justice that an accused's guilt must be proved beyond a reasonable doubt to sustain a conviction." *People v Hubbard*, 387 Mich 294, 299; 196 NW2d 768 (1972). Accordingly, a conviction that is not supported by sufficient evidence to prove guilt beyond a reasonable doubt violates due process and

---

[4] Although defendant declined to identify himself, Officer Belen was familiar with defendant and provided his name to Officer Deleeuw.

[5] *People v Prude*, unpublished per curiam opinion of the Court of Appeals, issued March 23, 2023 (Docket No. 360234), pp 1, 8.

4

cannot stand.  US Const, Ams V and XIV; Const 1963, art 1, § 17; *Jackson v Virginia*, 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979); *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979) (opinion by COLEMAN, C.J.).

An appellate court reviews de novo a lower court's determination that there was sufficient evidence to support a conviction, meaning that the appellate court provides no deference to the lower court's determination.  *People v Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020).  Yet reversing a guilty verdict on the basis that there was insufficient evidence is a high bar to overcome.  "In evaluating [a] claim regarding the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt."  *Id*. (quotations marks and citation omitted).  "A reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict."  *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (cleaned up).  This standard of review is deferential to the fact-finder that weighed the evidence to determine the criminal defendant was guilty beyond a reasonable doubt.

However, a reviewing court only defers to a jury on questions of fact; it does not defer on questions of law.  See *People v Kolanek*, 491 Mich 382, 411; 817 NW2d 528 (2012) ("Questions of fact are the province of the jury, while questions of law are reserved to the courts.").  Questions of law that are not within the province of the jury include the proper scope of a penal statute and whether an officer's actions under a specific set of facts violated the Fourth Amendment.  See, e.g., *People v Rea*, 500 Mich 422, 429 n 2; 902 NW2d 362 (2017); *People v Pagano*, 507 Mich 26, 31; 967 NW2d 590 (2021).

5

Generally, in addressing the lawfulness of police action under the Fourth Amendment, the trial court makes factual findings and appellate courts review those factual findings for clear error and review de novo, as a question of law, the trial court's application of the constitutional standards to those facts. See, e.g., *Pagano*, 507 Mich at 31. However, the dynamic is different when lawfulness is an element of a criminal offense that the prosecution must prove beyond a reasonable doubt. The Court of Appeals has suggested that, in these circumstances, the question of lawfulness "becomes a question of fact to be decided by the jury." *People v Dalton*, 155 Mich App 591, 598; 400 NW2d 689 (1986); see also *People v Quinn*, 305 Mich App 484, 494; 853 NW2d 383 (2014). We clarify that while the jury—rather than the trial court—acts as the finder of fact when lawfulness is an element of a criminal offense, the court remains the ultimate arbiter of whether, under a particular set of facts, police actions were lawful.

Put together, when the lawfulness of police action is an element of a criminal offense, a court reviewing a challenge to the sufficiency of the evidence supporting a conviction must view the facts in the light most favorable to the prosecution and then determine whether, as a matter of law, an officer's actions were "lawful" in light of those facts. Under this test, a conviction will be overturned only when an officer's conduct cannot be reasonably perceived as lawful when viewed under a lens sufficiently deferential to that conduct.

## III. ANALYSIS

It is undisputed that Officers Deleeuw and Belen sought to detain defendant,[6] that such a detention implicates defendant's Fourth Amendment rights, and that the governing standard for whether the officers' actions were lawful comes from *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

Under *Terry*, an officer can detain a citizen for a brief investigatory stop if the officer has "reasonable suspicion" that the citizen is engaged in, or is about to be engaged in, criminal activity. See, e.g., *United States v Arvizu*, 534 US 266, 273; 122 S Ct 744; 151 L Ed 2d 740 (2002). While the level of suspicion required for a *Terry* seizure is less than that required for probable cause to arrest, an officer must have more than "an inchoate or unparticularized suspicion or 'hunch[.]'" *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). Rather, a *Terry* seizure is only lawful if an officer has an objectively reasonable "*particularized* suspicion that the specific individual being stopped is engaged in wrongdoing." *People v Faucett*, 442 Mich 153, 161; 499 NW2d 764 (1993) (emphasis added). Whether this standard is met in a particular case is fact-specific and requires an analysis of the totality of the circumstances known by the officer when the seizure

---

[6] In the context of *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the words "detain" and "detention" are often used as synonyms for a "seizure" under the Fourth Amendment. See, e.g., *United States v Sokolow*, 490 US 1, 7; 109 S Ct 1581; 104 L Ed 2d 1 (1989); *People v Oliver*, 464 Mich 184, 193; 627 NW2d 297 (2001). The parties and lower courts appear to assume that Officers Deleeuw and Belen actually detained defendant in the vehicle, albeit temporarily. We see no need to reach the question of whether this was a seizure or attempted seizure because this issue was not raised by either party and given our conclusion that the officers' conduct was unlawful, the result is the same regardless.

occurred. See *United States v Cortez*, 449 US 411, 417; 101 S Ct 690; 66 L Ed 2d 621 (1981).

The totality of the circumstances known to the officers in this case can be broken down into three categories: (1) defendant was alone and parked legally with the engine off during daylight hours in an area of the parking lot where nonresidents frequently committed crimes, (2) defendant declined to identify himself at Officer Deleeuw's request, and (3) defendant admitted that he was not a resident of the apartment complex but that he was visiting his girlfriend, who was a resident. Even viewed together, these facts did not add up to an objectively reasonable particularized suspicion that defendant was trespassing.

That defendant was in an area where *other* nonresidents had frequently committed crimes did not provide reasonable suspicion that *he* was engaged in criminal activity when the officers approached him. Both officers testified that they had no evidence (1) tying defendant to the prior criminal activity committed at the complex, or (2) that defendant was engaged in criminal activity when they first approached his vehicle. "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v Wardlow*, 528 US 119, 124; 120 S Ct 673; 145 L Ed 2d 570 (2000).[7] This is because "presence in a high-crime neighborhood does nothing to distinguish [a citizen] from any number of other pedestrians in the area. It provides no *particular* reasonable basis for

---

[7] See also *Brown v Texas*, 443 US 47, 52; 99 S Ct 2637; 61 L Ed 2d 357 (1979) ("The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct."); *People v Nelson*, 443 Mich 626, 636; 505 NW2d 266 (1993) ("Simply being in a high crime area is certainly not enough evidence to meet the required level [for reasonable suspicion.]").

suspicion as to the activity of [that citizen]." *People v Shabaz*, 424 Mich 42, 60; 378 NW2d 451 (1985) (emphasis added).

While presence in a high-crime area may *support* the existence of reasonable suspicion, this is so *only if a suspect engages in suspicious behavior*. See *Wardlow*, 528 US at 124; *Shabaz*, 424 Mich at 60-61.[8] But there is nothing suspicious about being parked in an apartment-complex parking lot in the early evening.[9] This is especially true here given that there was still daylight and the officers admitted that they did not know how long defendant had been parked there. If such innocuous behavior provided reasonable suspicion for a *Terry* stop simply because it occurred in a high-crime area, there would essentially be "an exception to the Fourth Amendment for all people living in or passing through certain neighborhoods." *People v Maggit*, 319 Mich App 675, 693 n 8; 903 NW2d 868 (2017). As aptly stated by our Court of Appeals:

---

[8] The United States Supreme Court has identified unprovoked "[h]eadlong flight" as an act that may provide reasonable suspicion when it occurs in a high-crime area. *Wardlow*, 528 US at 124; see also *Oliver*, 464 Mich at 197 (citing *Wardlow*); but see *Shabaz*, 424 Mich at 64 (holding that there was no reasonable suspicion when the defendant was in a high-crime area at night and fled from plain-clothes police officers). While defendant here fled from the officers, he did so only *after* they sought to detain him, so this could not have provided reasonable suspicion to detain him in the first place. See *Faucett*, 442 Mich at 167 n 18 ("The relevant inquiry focuses upon the information known to the police officer at the time of the stop and whether it makes the related inference of criminality a reasonable one."); *Terry*, 392 US at 21-22.

[9] Cf. *People v Freeman*, 413 Mich 492, 496; 320 NW2d 878 (1982) ("A lone automobile idling in a darkened parking lot late at night does not, without more, support a reasonable suspicion of criminal activity."); *Oliver*, 464 Mich at 194 ("[I]n itself, there is certainly nothing suspicious about four men occupying a car that is leaving an apartment complex."); *Shabaz*, 424 Mich at 60, 65 (finding no reasonable suspicion when the suspect came out of an apartment complex in a high-crime area, concealed a paper bag, and ran from a plain-clothes officer).

This Court appreciates the fact that the police are attempting to eradicate illegal activities in the community; however, the issue before us is whether [the officer's actions were lawful] under the presenting circumstances. All members of the community remain entitled to freedom from unreasonable searches and seizures. [*Id.* at 685 n 5.]

Next, Officer Deleeuw testified that he asked defendant to identify himself, but defendant declined. However, it is well established "that a refusal to cooperate [with police], without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v Bostick*, 501 US 429, 437; 111 S Ct 2382; 115 L Ed 2d 389 (1991).[10] Moreover, defendant's failure to identify himself (while answering the officers' other questions) is a far cry from the unprovoked "[h]eadlong flight" in a high-crime area that the Supreme Court held was sufficient to justify a *Terry* stop. *Wardlow*, 528 US at 124-125; see *United States v Heard*, 725 Fed Appx 743, 751-754 (CA 11, 2018) (holding that officers lacked reasonable suspicion under *Wardlow* to detain a suspect in a high-crime area who declined to answer some of the officer's questions but did not flee). Finding reasonable suspicion under these circumstances would effectively mean that any person who is approached by an officer in a high-crime area must fully cooperate with that officer or else be subject to a *Terry* seizure. Ironically, the compliance that would be required to avoid a seizure would essentially amount to a seizure. See *Shabaz*, 424 Mich

---

[10] See also *Florida v Royer*, 460 US 491, 497-498; 103 S Ct 1319; 75 L Ed 2d 229 (1983) (opinion by White, J.) (plurality opinion); *Shabaz*, 424 Mich 56-57, quoting *Royer*, 460 US at 497-498; *Brown*, 443 US at 52 ("[E]ven assuming that purpose [i.e., the prevention of crime] is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it."); cf. *Hiibel v Sixth Judicial Dist Court of Nevada, Humboldt Co*, 542 US 177, 184, 188-189; 124 S Ct 2451; 159 L Ed 2d 292 (2004) (citing *Brown* favorably and holding that, *if a stop is justified by reasonable suspicion of criminal activity*, a suspect can be required to identify himself).

at 63 (expressing concern with an approach that would turn all consensual police encounters into *Terry* seizures simply because a suspect declines to cooperate with police). Again, we decline to create "an exception to the Fourth Amendment for all people living in or passing through certain neighborhoods." *Maggit*, 319 Mich App at 693 n 8.

Finally, defendant told Officer Deleeuw that he was not a resident of the apartment complex and was visiting his girlfriend, who was a resident. As commonsense would indicate, it is generally not trespassing for a nonresident to visit a resident of an apartment complex and to be present in the apartment's common areas while doing so. See *Stanley v Town Square Coop*, 203 Mich App 143, 147; 512 NW2d 51 (1993) ("A landlord generally grants to the tenants the right to invite others to use the common areas of the property in order that they might gain access to the property under the tenants' control.").[11] Moreover, "[i]t is not an offense for an individual to be upon the private property of another unless he has entered 'after having been forbidden so to do by the owner or occupant' or refused to depart after having been told to do so." *People v Freeman*, 413 Mich 492, 496-497; 320 NW2d 878 (1982), quoting MCL 750.552. The officers here had every right to seek a *consensual* encounter with defendant in the parking lot to determine whether he was

---

[11] As noted, Officer Deleeuw testified that Fox Ridge Apartments had a "trespassing policy," whereby nonresidents were required to be in an apartment or with a tenant while on the premises. However, this policy was not admitted as substantive evidence at trial, and the prosecution has conceded on appeal that this policy "did not create, or form the basis of, reasonable suspicion to detain Defendant." In any event, it is questionable whether a private entity's trespassing policy could render lawful an otherwise unlawful detention. Cf. *Maggit*, 319 Mich App at 685-686 (holding that a business's " 'letter of intent to prosecute trespassers' " provided to the police, of which the defendant had no knowledge, did not support probable cause to arrest him for trespassing).

engaged in any criminal activity and to advise him of any trespass policy the complex may have had. See, e.g., *People v Jenkins*, 472 Mich 26, 33; 691 NW2d 759 (2005). They also may have had the authority to ask defendant to leave the premises if he was violating the apartment's trespass policy and, if he declined to leave, arrest him for trespassing. See MCL 750.552.

Instead, the officers chose to detain defendant until they could (1) confirm whether he was a resident at the complex[12] and (2) determine whether he had received any previous warnings from the complex.[13] In order to detain him lawfully, the officers were required to have an objectively reasonable particularized suspicion that defendant was trespassing. And there was nothing suspicious about defendant's innocent explanation for his presence in the parking lot that created the reasonable suspicion that was lacking before he provided that explanation.

We recognize that, in some circumstances, individual factors that would be insufficient on their own to justify a *Terry* stop can, in the aggregate, provide reasonable suspicion under the totality of the circumstances. See, e.g., *People v Oliver*, 464 Mich 184, 202; 627 NW2d 297 (2001). However, this is only so if the individual factors

---

[12] Defendant had already admitted that he was not a resident, so it is unclear why the officers needed to check his tenant status on LEIN to determine if he was trespassing.

[13] Notably, Officer Deleeuw testified that defendant did not have a prior warning on I/LEADS, and there was no indication that either officer asked defendant to leave the premises or that defendant declined such a request to do so (to the contrary, defendant seemingly wanted to leave, and the officers prevented him from doing so). Thus, it appears that defendant was not, in fact, guilty of trespassing under MCL 750.552. Moreover, there is no evidence that the officers followed up on defendant's assertion that he was visiting his girlfriend who was a resident or that defendant's assertion in this regard was untruthful.

"collectively . . . are greater than the sum of their parts, and build to form the requisite objective basis for the particularized suspicion that criminal wrongdoing is afoot . . . ." *Shabaz*, 424 Mich at 60; see also *Faucett*, 442 Mich at 161 ("[T]he assessment of all the circumstances must yield a particularized suspicion that the specific individual being stopped is engaged in wrongdoing."). There is no evidence in this case that defendant engaged in *any* suspicious behavior to provide a particularized basis for a seizure. That he was in a high-crime area and declined to identify himself is simply not enough.

Defendant's convictions directly stemmed from unlawful police action. He was convicted of (1) second-degree fleeing and eluding, MCL 257.602a(4), and (2) assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). Neither party disagrees that these statutes both require the officer to be acting lawfully. Because the officers' actions were outside of the lawful performance of their duties—a required element for each offense—the prosecution did not prove defendant's guilt beyond a reasonable doubt. Defendant's convictions, therefore, were not supported by the prosecution proving the element of lawful performance beyond a reasonable doubt, and defendant's convictions are invalid.

## IV. CONCLUSION

Because there was insufficient evidence that the officers acted lawfully on the basis of reasonable suspicion of criminal activity, defendant's convictions cannot stand.[14]

---

[14] At times in his appellate briefing, defendant suggests that he is entitled to a new trial. However, as defendant himself recognizes, the proper remedy when insufficient evidence was presented is a judgment of acquittal for those offenses, not a new trial. See *People v Mehall*, 454 Mich 1, 5; 557 NW2d 110 (1997).

Accordingly, we reverse the judgment of the Court of Appeals, reverse defendant's convictions and sentences, and remand to the Kalamazoo Circuit Court to enter judgments of acquittal as to both charges.

Megan K. Cavanagh
Elizabeth T. Clement
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden

14

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                   No. 165664

DOUGLAS ARNELL PRUDE,

      Defendant-Appellant.

_____

VIVIANO, J. (*dissenting*).

In this case, the majority holds that the police officers acted unlawfully when they attempted to briefly detain defendant, Douglas A. Prude, to investigate whether he was trespassing while the officers were on directed patrol at the request of the property owner in a high-crime area. The jury convicted defendant of the offenses of second-degree fleeing and eluding[1] and resisting or obstructing a police officer,[2] and the Court of Appeals unanimously affirmed defendant's convictions.[3] This Court peremptorily vacates those convictions without hearing argument on the application or granting leave to appeal.[4]

_____

[1] MCL 257.602a(4).

[2] MCL 750.81d(1).

[3] *People v Prude*, unpublished per curiam opinion of the Court of Appeals, issued March 23, 2023 (Docket No. 360234).

[4] I do not believe this case should be resolved peremptorily and the jury's verdict tossed aside without merits briefing and without the benefit of oral argument. I believe peremptory reversals are appropriate only "when the law is clear and the case is resolved on the issues and arguments presented by the parties." *Holman v Farm Bureau Gen Ins*

Because the lower courts did not clearly err by determining that the officers had a reasonable suspicion that defendant was engaged in criminal activity, I would simply deny leave. See MCR 7.305(B).

The dispositive issue in this case comes before us in an unusual procedural posture. Given that the lawfulness of the officers' actions in this case is an element of both offenses of which defendant was convicted, defendant's challenge to the lawfulness of the investigatory stop comes in the form of a motion for new trial that challenged the sufficiency of the evidence supporting his convictions.[5] Although the Court of Appeals has stated that "if the lawfulness of the arrest is an element of a criminal offense, it becomes a question of fact for the jury," *People v Quinn*, 305 Mich App 484, 494; 853 NW2d 383 (2014), I agree with the majority that this Court is still the final arbiter of whether police actions were lawful and that, as with any other challenge to the sufficiency of the evidence, we must review the evidence " 'in a light most favorable to the prosecutor' " and " 'draw

_____

*Co of Mich*, 511 Mich 974, 977 (2023) (VIVIANO, J, dissenting). See also *Weisgerber v Ann Arbor Center for the Family*, 447 Mich 963, 968-969 (1994) (LEVIN, J., dissenting) ("Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required."). Challenges to the lawfulness of an officer's conduct are often legally and factually complex, and they must be resolved on a case-by-case basis. This case is no exception.

[5] In particular, defendant argues that the prosecution failed to provide sufficient evidence that the officers were in the lawful performance of their duties, which is an element of the fleeing and eluding charge under MCL 257.602a(1), see *People v Chapo*, 283 Mich App 360, 366; 770 NW2d 68 (2009), and an element of the resisting or obstructing charge under MCL 750.81d(1), see *People v Moreno*, 491 Mich 38, 52, 55-57; 814 NW2d 624 (2012).

2

all reasonable inferences and make credibility choices in support of the jury verdict,' " *ante* at 5 (citations omitted).

The question, then, is whether the officers were acting in the lawful performance of their duties when they told defendant he was not free to leave. This, in turn, depends on whether, when viewing the facts under the deferential standard of review recited above, the officers had a reasonable suspicion that defendant was engaged in criminal activity such that they could briefly detain him to investigate whether he was trespassing.

In determining whether the police had a reasonable suspicion to lawfully detain a person, a court must consider all of the facts and circumstances known to the officer, viewed in light of the officer's experience and from the perspective of an experienced law enforcement officer. See *United States v Cortez*, 449 US 411, 417-418; 101 S Ct 690; 66 L Ed 2d 621 (1981).[6] Additionally, "factors that in isolation appear innocent may, in combination, provide a police officer with reasonable suspicion to justify an investigative stop[.]" *Oliver*, 464 Mich at 193.

---

[6] See also *People v LoCicero* (*After Remand*), 453 Mich 496, 501-502; 556 NW2d 498 (1996) ("[D]ue weight must be given . . . to the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience.") (quotation marks and citation omitted); *Cortez*, 449 US at 418 (emphasizing that the evidence "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement"); *People v Oliver*, 464 Mich 184, 196; 627 NW2d 297 (2001) ("[L]aw enforcement officers are permitted, if not required, to consider the modes or patterns of operation of certain kinds of lawbreakers.") (quotation marks and citation omitted); *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005) (holding that a "determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior" from the perspective of a law enforcement officer) (quotation marks and citation omitted).

In this case, looking at the totality of circumstances in the light most favorable to the prosecution, the lower courts did not clearly err by finding that the officers had a reasonable suspicion that defendant was trespassing. First, the officers were on directed patrol in a high-crime area at the request of the property owner, which is certainly a relevant contextual consideration. See *Illinois v Wardlow*, 528 US 119, 124; 120 S Ct 673; 145 L Ed 2d 570 (2000) ("[W]e have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a *Terry* analysis.") (citation omitted); *United States v Oglesby*, 597 F3d 891, 894 (CA 7, 2010) ("While being present in a high-crime area cannot, in and of itself, support a particularized suspicion that a subject is committing a crime, an officer is permitted to consider a location's characteristics when assessing a situation."); *United States v Young*, 707 F3d 598, 603-604 (CA 6, 2012) (noting that an officer's knowledge of high crime in a specific area, when connected to the specific crime being investigated, can enhance the strength of justifications for a stop). The officers in this case were very familiar with this particular apartment complex and had been there over a hundred times, including in the previous week, to investigate a full panoply of criminal activity. Specifically, the officers provided uncontradicted trial testimony that they had personally investigated and observed "almost on a nightly basis" similar criminal activity, i.e., trespass and loitering, at the exact location where defendant was stopped. Serious and violent crimes were also known to the officers to occur at that location, including "domestic violence, felonious assaults, . . . stabbings and shootings, [and] homicides," which were regularly committed by "non-residents."

Defendant's vehicle was backed into a parking space away from other vehicles in an area of the complex that was of particular concern to the officers because it was

4

secluded, and the officers were frequently called to disperse crowds and investigate crimes—often specifically trespass—at that specific location. Indeed, as noted, one of those incidents occurred just one week before defendant's arrest, which involved the sale of illegal drugs and possession of a loaded firearm. Defendant's location in this secluded area of the apartment complex was another relevant, contextual factor. See *United States v Montero-Camargo*, 208 F 3d 1122, 1138 (CA 9, 2000) (holding that the defendant's location "in an isolated, desert area frequently used to drop off or pick up undocumented aliens or contraband" was a factor that supported reasonable suspicion for the stop).

In addition, the apartment complex had a no-trespassing policy for nonresidents that required them to be with a resident on the property.[7] The apartment complex hired private security that worked with law enforcement to identify and cite trespassers. Although the policy itself was not entered into evidence, it was posted on the property, known to the officers, and the officers were on directed patrol at the request of the property owner to assist the owner's private security in enforcing the policy and citing offenders. The apartment complex even developed a database and list for tracking individuals who had received a trespass warning, to ensure officers could identify individuals who committed trespass by returning to the complex.

Finally, when the officers approached defendant, he was not with a resident, he admitted that he was not himself a resident, and he declined to identify himself. See *United*

---

[7] At trial, the policy itself was not admitted into evidence, but the officers were allowed to testify about their understanding of the policy. The majority acknowledges that the apartment complex's policy required nonresidents to be in an apartment or with a resident. *Ante* at 11 n 11.

5

*States v Smith*, 594 F3d 530, 541 (CA 6, 2010) ("Thus, while a suspect's refusal to answer or listen does not, by itself, justify a reasonable suspicion of criminal activity, it can be a factor that, together with other factors, supports a finding of reasonable suspicion."); *Baker v Smicsik*, 49 F Supp 3d 489, 498 (ED Mich, 2014) ("And Plaintiff's refusal to assist with the officers' investigation—by failing to identify himself or produce identification—only compounded the concern that Plaintiff may be engaged in a criminal activity."). Defendant told officers that he was there to visit his girlfriend, but as noted, the apartment building had established rules that prohibited nonresidents from being on the property without a resident present. As the officers themselves noted, the key fact giving rise to a reasonable suspicion was when defendant told them he was not a resident, thereby giving them reason to suspect that he might be a trespasser. That takes on special significance given the pervasive and known criminal activity, including trespass, that frequently occurred at this particular location within the apartment complex. Because one of the officers knew defendant's name from previous interaction with him, the officers told defendant he was not free to leave while they checked his name against the database provided by the apartment complex.[8]

Viewing those facts as a whole and in the light most favorable to the prosecution, the lower courts did not clearly err by determining that the officers had a particularized suspicion that defendant may have been trespassing when the officers encountered him. In

---

[8] Immediately after the officers told defendant he was not free to leave, he rolled up his window, started his ignition, and took off at a high rate of speed through the crowded parking lot. I agree that because defendant fled from the officers after he disobeyed their directive that he was not free to leave, that fact "could not have provided reasonable suspicion to detain him in the first place." *Ante* at 9 n 8.

6

other words, the officers had more than a "mere hunch" that defendant was committing trespass.  See *Navarette v California*, 572 US 393, 397; 134 S Ct 1683; 188 L Ed 2d 680 (2014) (explaining that reasonable suspicion was not met on a "mere hunch" but was "obviously less" than even probable cause) (quotation marks and citation omitted).  Thus, the majority's decision to toss aside the jury verdict in this case, without complete briefing or oral argument, is erroneous.  For these reasons, I respectfully dissent.

David F. Viviano
Brian K. Zahra
